484 A.2d 259

Paul LEVENE, etc. et al.

v.

Oscar ANTONE, Jr.

Dennis M. HENDERSON, etc. et al.

v.

Robert HOLLOWAY.

Misc. No. 4, Sept. Term, 1984.

Court of Appeals of Maryland.

Dec. 4, 1984.

Alfred J. O'Ferrall, III, Deputy Public Defender, Baltimore, for appellants.

Rita Linder Blundo, Baltimore (James D. Wright and Venable, Baetjer & Howard, Baltimore, on the brief), for appellees.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY and COUCH, JJ., and W. ALBERT MENCHINE, Associate Judge of the Court of Special Appeals (retired), specially assigned.

SMITH, Judge.

The United States District Court for the District of Maryland has certified to us the following question:

Does a client represented by one or more attorneys employed by the Office of the Public Defender of the State of Maryland have a property right under the law of the State of Maryland to the transcript of his or her trial which is in the custody of the Maryland Public Defender?

The certification was pursuant to Maryland Code (1974) § 12–601 et seq., Courts and Judicial Proceedings Article. We shall answer the question in the negative. The order of certification specified that Paul Levene and Dennis Henderson, defendants in the proceeding there pending, should be treated as appellants in this Court. Accordingly, Oscar Antone, Jr., and Robert Holloway, plaintiffs there, are here referred to as appellees. Because Levene and Henderson are part of the staff of the Public Defender and the controversy here involves the operation of the Public Defender's office, not them individually, we shall refer to them as the Public Defender.

I

Oscar Antone, Jr., was convicted in October 1979 by a Baltimore City jury of assault and of resisting arrest. He was represented by the Public Defender. Antone appealed to the Court of Special Appeals. He was represented there by the Public Defender, who procured a transcript of the trial proceedings at public expense for use in connection with that appeal. While the appeal was pending Antone

twice sought a photocopy of the transcript. He was informed that "Public Defender rules require that the one copy of the transcript [in the possession of the Public Defender] be retained in the case file at all times for use in the appeal and in any later proceedings which m[ight] be filed for [Antone]" and that "[t]he Public Defender's Office d[id] not have the resources to make another copy of the transcript . . . ." The Court of Special Appeals affirmed Antone's conviction in an unreported opinion. The Public Defender then informed Antone that he would not file a petition for a writ of certiorari on Antone's behalf. Antone was advised as to the method for filing a pro se petition. He filed such a petition, which we denied. See *Antone v. State,* 288 Md. 731 (1980).

Robert Holloway was convicted in September 1980 by a Baltimore County jury of armed robbery and handgun violations. He, too, was represented by the Public Defender, who prosecuted his appeal to the Court of Special Appeals. In that instance, also, a trial transcript was obtained at public expense for use in connection with the appeal. Holloway sought a photocopy of the transcript while the appeal was pending. He was advised:

> "Public Defender rules require that the transcript purchased by this office be preserved in the case file for use in the appeal and in any later proceedings that may be filed for you. The Public Defender's Office does not have the resources to make a copy for you."

The Court of Special Appeals affirmed Holloway's conviction in an unreported opinion. Holloway was advised that after review by the appellate staff of the Public Defender it was determined that no petition would be filed on his behalf for a writ of certiorari. He, too, was informed of the method for filing a pro se petition if he so desired. He did file. We denied it. See *Holloway v. State,* 291 Md. 776 (1981).

The order of certification states:

"Plaintiffs in these two cases are respectively Oscar Antone, Jr., and Robert Holloway, former clients of the Office of the Public Defender of the State of Maryland. Each plaintiff, pursuant to 42 U.S.C. § 1983 (1976), instituted his case in this Court, claiming that the Public Defender, by refusing to give him a copy of the transcript of his state trial which the Public Defender has in his possession, has deprived such plaintiff of property which is rightfully his and which for other reasons he has a right to use. Neither plaintiff has petitioned for federal habeas corpus relief, but each claims that his respective transcript will assist him in proving that perjured testimony was used against him in connection with his conviction in a court of the State of Maryland."

Not only have the appellees not sought federal habeas corpus relief, neither appellee has sought to invoke the post conviction procedure of Code (1957, 1982 Repl.Vol., 1984 Cum.Supp.) Art. 27, § 645A.

The court said in its order of certification:

"In the view of this Court, each plaintiff is entitled to have the Public Defender provide to him his trial transcript, free of charge, only if (a) such plaintiff demonstrates a 'particularized need' for the same, *see Jones v. Superintendent*, 460 F.2d 150, 152 (4th Cir.1972), *aff'd on rehearing*, 465 F.2d 1091 (4th Cir.1972), *cert. denied*, 410 U.S. 944 [, 93 S.Ct. 1380, 35 L.Ed.2d 611] (1973), or (b) such plaintiff has a 'property right in his trial transcript under the laws of the State of Maryland. This Court has concluded and held in each of these cases that neither plaintiff has shown such 'particularized need.' [1] Accord-

---

**1.** In *Jones v. Superintendent*, 460 F.2d 150, *aff'd on rehearing*, 465 F.2d 1091 (4th Cir.1972), *cert. denied*, 410 U.S. 944, 93 S.Ct. 1380, 35 L.Ed.2d 611 (1973), the Superintendent of the Virginia State Farm appealed to the Fourth Circuit an order of the district court which required him to produce the entire record of the petitioner's criminal convictions and the entire record of any state collateral proceedings. He urged upon the court that the state is not required to furnish transcripts of any state judicial proceeding to such an individual

ingly, if the answer to the question certified herein is 'yes,' plaintiffs are entitled to judgment and relief in these cases; if not, defendant is entitled in each case to judgment. Thus, this Court is of the view that the question certified herein is 'determinative' as that word is used in Md.Cts. & Jud.Proc.Code Ann. § 12–601 (1974)."

## II

The Public Defender states:

"It has been the experience of the Office of the Public Defender that lending transcripts to individuals whom we have represented inevitably leads to difficulty. Invariably, a potential post conviction or habeas corpus petitioner who seeks to proceed *pro se,* when faced with the complexities of *pro se* litigation, comes back to the Office of the Public Defender at his own request or at the request of the court having jurisdiction. And, invariably the transcript is missing, partially destroyed, or mutilated in some manner, resulting in additional delays to the litigants and the courts, and expense to the public."

He further states that by reason of those problems the following procedures have been adopted:

"1. The Office of the Public Defender cannot make free copies of transcripts for clients. The transcripts purchased by this office for the purpose of representing a client on appeal must be preserved in the Public Defender

---

unless a need for them is shown. The Fourth Circuit said that "the state m[ight] constitutionally decline to furnish an indigent with a transcript until a need for it is shown, even though the transcript is already in existence." 460 F.2d at 153. The court went on:

"We hold the right to a transcript when needed to collaterally attack a conviction does not depend upon a balancing of the expense and administrative inconvenience to the state against the interest of a defendant in securing a trial free from constitutional error. The right is absolute, irrespective of expense or inconvenience to the state. Conversely, if no need is shown, there is no constitutional right to a transcript, regardless of how easily and · inexpensively the state could furnish it." 460 F.2d at 153.

This was the basis of the finding by the United States District Court of no particularized need for the transcripts in this case.

file for use in the appeal and in any later proceedings that may be necessary in the case. The budget of the Office of the Public Defender as approved by the Maryland Legislature has no funds for copying transcripts for clients and the Public Defender is prohibited by law from expending funds which have not been budgeted.

"2. A lawyer assigned by the Public Defender's Office to represent a client for appeal or post conviction proceedings is not permitted to give or lend a transcript to the client or to any other person.

"3. The Public Defender's Office will not pay for preparation of transcripts for use in any case in which the defendant, appellant or petitioner has not been found eligible for Public Defender representation and accepted as a Public Defender client.

"4. If a lawyer is retained to represent a Public Defender client on appeal after the transcripts have been purchased by the Public Defender's Office, this office will provide that lawyer with the transcripts upon receipt of reimbursement for the full cost of preparation of the transcripts.

"5. After representation of a client on appeal has concluded, the Public Defender's Office will lend the transcript to any lawyer assigned or retained to represent the client in any proceeding challenging the legality of his or her conviction or seeking reduction of his or her sentence, provided that the client is unable to pay the cost of copying the transcript.

"6. A client may obtain a copy of any existing transcript relating to his case under the Maryland Public Information Act by making a request in writing to the Public Defender's Appellate Division and paying, in advance by cashier's check or money order, the cost of copying and mailing the transcript. Payment of these costs will not be waived."

The Public Defender indicates that in any given case if a pro se petition for a writ of certiorari is granted he will provide counsel who will, of course, have access to any

existing transcript. Indeed, in *Carr v. State*, 284 Md. 455, 456, 397 A.2d 606, 606 (1979), we referred to the fact that it was a pro se petition which was granted. After the granting of the petition, however, the Public Defender assigned counsel to represent Carr. We reversed the judgment in that case.

The Public Defender points out that "the Inmate Services Division of the Public Defender's Office provides assistance to inmates confined within the Maryland Correctional System in connection with the preparation of complaints to be filed in Federal habeas corpus cases pursuant to 28 U.S.C. Section 2254."

63A Am.Jur.2d *Property* § 27 (1984) states:

"The law recognizes two principal ways of acquiring property: by descent and by purchase. The latter includes acquisition by alienation, that is, through sale, gift, or devise, and by escheat, occupancy, prescription, and forfeiture. These are the means of original acquisition. Property may also be acquired by the operation of natural causes, as by accretion in the case of real property, and in the case of personal property, by the increase of animals. Property in personalty may be acquired, too, by its incorporation into or union with other property." 63A Am. Jur.2d at 258.

73 C.J.S. *Property* § 32 (1983) says relative to acquisition of personal property:

"The title to personal property may pass by the delivery of possession, and delivery is generally necessary to pass title. Ownership of personal property passes according to the intent of the parties." 73 C.J.S. at 228.

The appellees do not assert here that they have acquired title to the transcripts in question by any of these conventional means. Rather, they spin two theories upon which they claim a property right in the transcripts: that as clients of the Public Defender they as principals have a property right in a transcript coming into the possession of the Public Defender as their agent during the course of

professional employment, and that the transcripts have been acquired by their former attorneys in the course of state-mandated representation and thus they have a state-created benefit or entitlement to the transcripts.

Any agency or any state-created benefit or entitlement must stem from the Public Defender statute found in Code (1957, 1983 Repl.Vol., 1984 Cum.Supp.) Art. 27A. It was originally enacted by Ch. 209 of the Acts of 1971. Section 1 contains a declaration of policy and legislative intent:

"It is hereby declared to be the policy of the State of Maryland to provide for the realization of the constitutional guarantees of counsel in the representation of indigents, including related necessary services and facilities, in criminal and juvenile proceedings within the State, and to assure effective assistance and continuity of counsel to indigent accused taken into custody and indigent defendants in criminal and juvenile proceedings before the courts of the State of Maryland, and to authorize the Office of Public Defender to administer and assure enforcement of the provisions of this article in accordance with its terms."

Definitions are found in § 2. The term "expenses" is defined in § 2(g) as meaning "all costs incident to investigation, other pretrial preparation, trial and appeal of a person accused of a serious crime." We are advised that it is pursuant to this definition that the transcripts in question have been acquired. The term "serious crime" is defined in § 2(h):

"(1) A felony;

"(2) A misdemeanor or offense, the penalty for which involves the possibility of confinement for more than three months or a fine of more than $500, or any other offense where, in the opinion of the court, either the complexity of the matter, or the youth, inexperience, or mental capacity of the accused, may require representation of the accused by an attorney; and

"(3) An act that, except for the age of the person involved, would otherwise be a serious crime."

Art. 27A, § 3 establishes the Office of Public Defender "in the executive branch of the government of the State of Maryland." It states that the head of the office "shall be the Public Defender ...." He is appointed by the board of trustees and is to serve at their pleasure. The section goes on to provide for appointment by the Public Defender of a deputy public defender and one district public defender for each district of the District Court. Section 3(c) provides, "The Public Defender shall appoint such investigators, stenographic and clerical assistants and other personnel to assist him and the district public defenders as may be required for the proper performance of the duties of the office, and as provided in the budget."

The duties of the Public Defender are set forth in § 4. Section 4(a) provides that "the primary duty of the Public Defender [is] to provide legal representation for any indigent defendant, eligible for services under [Art. 27A]." Subsection (b) goes on to specify that legal representation shall be provided indigent defendants in the following proceedings:

"(1) In any criminal or juvenile proceeding constitutionally requiring the presence of counsel prior to presentment before a commissioner or judge.

"(2) Criminal or juvenile proceedings where the defendant is charged with a serious crime, before the District Court of Maryland, the various circuit courts within the State of Maryland, and the Court of Special Appeals.

"(3) Postconviction proceedings under Article 27, Annotated Code of Maryland, when the defendant has a right to counsel pursuant to § 645A of that article.[2]

---

2. Code (1957, 1982 Repl.Vol., 1984 Cum.Supp.) Art. 27, § 645A(f) provides, "A petitioner is entitled to the assistance of counsel and a hearing on the first petition filed by the petitioner under this section. The court shall determine if assistance of counsel or a hearing should be granted on subsequent petitions filed by a petitioner."

"(4) Any other proceeding where possible incarceration pursuant to a judicial commitment of individuals in institutions of a public or private nature may result."

Subsection (c) deals with representation in federal courts:

"This article applies only to representation in or with respect to the courts of this State. It does not prohibit the Public Defender's Office from representing an indigent person in a federal court of the United States at federal expense, if the matter arises out of, or is related to, an action pending or recently pending in a court of criminal jurisdiction of this State. Any compensation paid by the federal court to the Public Defender, his deputy, district public defenders, or assistant public defenders, shall be remitted to the general funds of the State."

Section 4(d) states:

"Representation of the Office of the Public Defender or by an attorney appointed by the Office of the Public Defender, shall extend to all stages in the proceedings including custody, interrogation, preliminary hearing, arraignment, trial, and appeal, if any, and shall continue until the final disposition of the cause, or until the assigned attorney is relieved by the Public Defender or by order of the court in which the cause is pending."

The powers and duties of the Public Defender are set forth in § 5. He assumes general responsibility for the operation of the Office of Public Defender and all district offices. He is to prepare schedules of professional fees and expenses to be paid panel attorneys and for other professional and technical services rendered to indigent persons other than by the Public Defender's staff. He is authorized to formulate and adopt such rules and regulations as are necessary to effectuate the purposes of Art. 27A and to promote the efficient conduct of the work and general administration of the office, its professional staff and other employees. The Public Defender is to have authority to make all necessary arrangements to coordinate services of

that office with any federal program to provide counsel to the indigent. He is authorized in Baltimore City to enter into contracts from time to time with private or public organizations that are equipped to provide legal, administrative or technical services for indigent persons. He is authorized to accept the services of volunteer workers or consultants at no compensation or at nominal or token compensation and to reimburse them for their proper necessary expenses. The Public Defender is to consult and cooperate with professional bodies and groups with respect to the causes of criminal conduct, the development of effective means for reducing and discouraging the commission of crime, the rehabilitation and correction of persons charged and convicted of crime, the administration of criminal justice, and the administration and conduct of the Office of the Public Defender. He is to keep and maintain proper financial and statistical records concerning all cases where the Office of the Public Defender provides legal assistance to an indigent person, including data for use in the calculation of all direct and indirect costs incident to the operation of the office.

Art. 27A, § 6 provides relative to the appointment of panel attorneys. Sec. 6(f) states that nothing in Art. 27A is to be construed to deprive any court mentioned in Art. 27A, § 4(b)(2) of its authority to appoint an attorney to represent an indigent person "where there is a conflict in legal representation in a matter involving multiple defendants and one of the defendants is represented by or through the Office of the Public Defender, or where the Office of the Public Defender declines to provide representation to an indigent person entitled to representation under [Art. 27A]."

The bases for eligibility of indigent defendants for the services of the Office of the Public Defender are set forth in § 7. That section provides that "[n]eed shall be measured according to the financial ability of the person to engage and compensate competent private counsel and to provide all other necessary expenses of representation."

Such ability is to "be recognized to be a variable depending on the nature, extent and liquidity of assets; the disposable net income of the defendant; the nature of the offense; the efforts and skill required to gather pertinent information; the length and complexity of the proceedings; and any other foreseeable expenses." The section goes on to provide relative to investigation of the financial status of a defendant and to provide for the recovery of expenses in certain circumstances.

Section 8 states that communication between an "individual defendant and any person in or engaged by the Public Defender shall be fully protected by the attorney-client privilege to the same extent and degree as though counsel had been privately engaged." It further says that this in no way precludes the use by the Public Defender of material in his files, otherwise privileged, for the preparation and disclosure of statistical, case study, and other sociological data if there is no disclosure of the identity of particular defendants.

Provision is made in § 9 for the board of trustees. Section 10 is concerned with district advisory boards. Section 11 pertains to the Public Defender's report to the board of trustees, to the Governor, and to the General Assembly. Provision for severability is made in § 12. Section 13 states that funds for carrying out the provisions of Art. 27A shall be as provided in the State budget from time to time. Local exemptions are authorized in § 14.

It will be seen from our review of the Public Defender statute that in no place in that act is there a vesting in a client of the Public Defender of a right, property or otherwise, in the transcript of his criminal trial. As we have indicated, appellees reason that they have a property right based on a belief that the transcripts have been acquired for them as principals by the Public Defender as their agent and hence that title is vested in them. Their second belief is that the transcripts are a state-created benefit or entitlement which vests them with title. It would seem that

indigents confined in the Maryland correctional system would not be the only ones with sufficient imagination to come up with the theories here advanced. However, counsel advise they have been unable to locate any case presenting similar issues and we have found none in our research.

We reject the agency theory. It is true that when an attorney appears in court on behalf of a client he appears as agent of that client in that proceeding. However, the transcripts in question have not been acquired by the Public Defender as agent of the appellees. The transcripts have been acquired by the State to assist the Public Defender in the discharge of the constitutional and statutory obligations imposed and assumed by the State under Art. 27A, § 1 "to provide for the realization of the constitutional guarantees of counsel in the representation of indigents ... in criminal ... proceedings within the State, and to assure effective assistance and continuity of counsel to indigent accused ...." This is a continuing obligation. It does not cease upon termination of litigation in Maryland's appellate courts after the initial conviction. Litigation goes on.[3] There may be, and usually are, post conviction proceedings in our Maryland courts where that transcript may be vitally important. The Public Defender, as we have indicated, is obliged to represent such indigents in the first petition under the Maryland Post Conviction Procedure Act. Art.

---

**3.** In *Bartholomey v. State,* 267 Md. 175, 222, 297 A.2d 696, 720–21 (1972) (Smith, J., dissenting), reference was made to "the seemingly endless litigation in criminal cases," adding by footnote:

"An apt example is that of Johnnie Brown, tried and convicted of having murdered a Salisbury police officer in 1958. *See Brown v. State,* 225 Md. 349, 170 A.2d 300, 85 A.L.R.2d 1107 (1961); the same *Brown* involved in cases reported in 228 Md. 654, 179 A.2d 419 (1962); 230 Md. 629, 186 A.2d 595 (1962), *cert. den.* 372 U.S. 960, 83 S.Ct. 1017, 10 L.Ed.2d 13 (1963); 217 F.Supp. 547 (D.Md.1963); 334 F.2d 9 (4th Cir.1964), *cert. den.* 379 U.S. 917, 85 S.Ct. 269, 13 L.Ed.2d 188 (1964); 346 F.2d 149 (4th Cir.1965); 245 Md. 679, 226 A.2d 333 (1967); 264 F.Supp. 528 (D.Md.1967), *aff'd* by the U.S. Court of Appeals for the Fourth Circuit on September 22, 1967, *cert. den.* 390 U.S. 992, 88 S.Ct. 1188, 19 L.Ed.2d 1300 (1967); and 266 Md. 196, 292 A.2d 645 (1972)." 267 Md. at 222–23, n. 2, 297 A.2d at 721, n. 2.

27, § 645A(f) and Art. 27A, § 4(b)(3). He indicates that where the question presented appears to have merit the Public Defender will represent an indigent individual in a subsequent post conviction proceeding. There is further indication that the Public Defender has represented indigents in federal habeas corpus proceedings intended to challenge the validity of a conviction. The trial transcripts may be of vital importance there. The fact that these appellees say that they do not want any further representation by the Public Defender does not change the situation. First of all, changes of mind are not unknown. Secondly, however, there has as yet been no initial filing in Maryland for review under the Post Conviction Procedure Act. If these appellees do file a pro se petition, the Public Defender, as we have pointed out, is legally obligated to appear as counsel for them unless they obtain private counsel, which is not likely given their status as indigents. Transcripts are not acquired by the Public Defender simply as agent of these appellees but in the discharge of his statutory responsibilities to the appellees.

Appellees' "benefit or entitlement" theory stems from *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). There the Supreme Court held that an untenured college professor did not have a property interest in continued employment. The property interest at issue was that protected by the Due Process Clause of the Fourteenth Amendment, which the Court stated "extend[s] well beyond actual ownership of real estate, chattels, or money." 408 U.S. at 572, 92 S.Ct. at 2706, 33 L.Ed.2d at 557. The Court said, "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. These interests—property interests—may take many forms." 408 U.S. at 576, 92 S.Ct. at 2708, 33 L.Ed.2d at 560. Justice Stewart went on to explain for the Court how the specific benefits—and hence property interests—are acquired:

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

"Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."

408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561. The Court went on to say that in that case the professor "surely had an abstract concern in being rehired, but he did not have a *property* interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment." 408 U.S. at 578, 92 S.Ct. at 2710, 33 L.Ed.2d at 561. (Emphasis in original.)

The distinction necessary to establish a property interest under *Roth*, therefore, is that between a mere "abstract need" or "unilateral expectation" and a "legitimate claim of entitlement." Appellees rely upon our reasoning in *Riger v. L & B Ltd. Partnership*, 278 Md. 281, 363 A.2d 481 (1976), to prove that they have a "legitimate claim of entitlement" to the Public Defender's copy of the transcript.

In *Riger* tenants challenged the constitutionality of a Montgomery County rent control statute on "procedural due process" grounds. As Judge Eldridge put it for the Court, they "argue[d] that the procedure set forth in the statute under which landlords m[ight] seek 'extraordinary' rent increases under certain circumstances, involve[d] a taking of the tenants' 'property' without due process of law

and thus abridge[d] the tenants' Fourteenth Amendment rights." 278 Md. at 283, 363 A.2d at 483. Although the Court in *Riger* discussed a number of various types of benefits under federal and state statutes held to constitute "property" subject to procedural due process requirements, 278 Md. at 292, 363 A.2d at 487–88, the Court did not expand upon the "legitimate claim of entitlement" set forth by the Supreme Court in *Roth* as an essential to the establishment of a property interest. The Court held "that Montgomery County's regulation of the price which landlords m[ight] charge for their premises confer[red] no property right, protected by the Fourteenth Amendment, on holdover tenants." 278 Md. at 297, 363 A.2d at 490–91.

We likewise find that appellees have no "legitimate claim of entitlement" to the transcripts in question. Our reasons for reaching this conclusion are similar to those relative to the agency theory. Appellees' "legitimate claim of entitlement" under the Public Defender statute is to adequate representation of counsel, not to a transcript. The State has provided a transcript to the Public Defender to assist him in his representation of indigent defendants. The obligation of the Public Defender goes on, as noted. Should these appellees file a pro se petition under Art. 27, § 645A, the Maryland Post Conviction Procedure Act, the Public Defender is mandated to represent them. To do this he needs one of the tools the State has provided him, the transcript of the trial. The entitlement under the Act does not run to the appellees.

We hold that a client represented by one or more attorneys employed by the Office of the Public Defender of the State of Maryland does not have a property right under the law of this State to the transcript of his or her trial which is in the custody of the Maryland Public Defender.

QUESTION OF LAW ANSWERED AS HEREIN SET FORTH; COSTS TO BE EQUALLY DIVIDED.