635 A.2d 1

**Bernard MILLER**

v.

**STATE of Maryland.**

**No. 1231, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Dec. 29, 1993.

Opinion Corrected Jan. 26, 1994.

Certiorari Granted March 11, 1994.

Laurack D. Bray, Washington, DC, for appellant.

Diane Krejsa, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and William R. Hymes, State's Atty. for Howard County, Ellicott City, on the brief), for appellee.

Argued before WILNER, C.J., BLOOM and BYRNES, and J. NORRIS BYRNES, specially assigned, JJ.

WILNER, Chief Judge.

Appellant was one of two men charged with the kidnapping, robbery, and murder of Pamela Basu. The co-defendant, Rodney Solomon, is being represented by the Public Defender's Office. Appellant, who was tried separately in the Circuit Court for Howard County, was offered representation by the Public Defender but, though indigent, he declined the offer. He was represented at trial by Laurack D. Bray, Esq., an attorney whom he privately engaged. After a trial extending over a nearly two-week period, appellant was convicted of a number of offenses, including felony murder, for which he received sentences totaling life imprisonment plus 10 years.

Through Mr. Bray, appellant filed an appeal to this Court. Appellant did not request representation by the Public Defender with respect to the appeal, and he has not been denied such representation. Mr. Bray asserted at oral argument that he continues to represent appellant without charge to him, on a *pro bono* basis. Although there is nothing formally in the record to document that assertion, the State has not disputed it, and so we accept it as true.

The issue now before us is a very limited one: it is whether, under the circumstances we have recounted, the State is obliged to furnish appellant, without charge to him, a transcript of the trial proceeding for use in his appeal. He moved for that relief in the circuit court and appeals from the denial of his motion. Until that question is resolved, appellant cannot effectively proceed with the appeal from his convictions.

In denying appellant's motion for a free transcript, the court relied upon Md.Rule 1-325(b), which provides, in relevant part:

"The court shall order the State to pay the court costs related to an appeal ... and the costs of preparing any transcript of testimony, brief, appendices, and record extract necessary in connection with the appeal, in any case in which (1) the Public Defender's Office is authorized by these rules or other law to represent a party, (2) the Public Defender has declined representation of the party, and (3) the party is unable by reason of poverty to pay those costs."

There is no dispute here that appellant is unable by reason of poverty to pay for the transcript. There is also no dispute that the Public Defender's Office is authorized by law to represent appellant in this appeal and that it has never declined to provide that representation. It was solely on that ground—appellant's failure to establish the second of the three conditions in the Rule—that the court refused to order the State to pay for the transcript.

Appellant does not contend that the court misconstrued or misapplied the Rule. His argument is that, as applied, the Rule is unconstitutional—that the State cannot validly condition an indigent person's right to a State-provided transcript on a declination of representation by the Public Defender. That violates, he says, his Federal and State rights to due process of law and equal protection of the law as set forth in *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), and infringes upon his Sixth Amendment and Maryland Constitutional rights to counsel. We need not reach the Constitutional issues raised by appellant, for we shall conclude that he is entitled to the transcript under the Rule. In explaining that conclusion, we need to look at the derivation of the Rule in light of *Griffin.*

*Griffin* was a 5–4 decision. The judgment was explained in a plurality Opinion by Justice Black, in which three other Justices joined, and a concurring Opinion by Justice Frankfurter. Justice Black began by noting that, in Illinois, there

was a statutory right of appeal in criminal cases. He then framed the issue before the Court thusly: "The question presented here is whether Illinois may, consistent with the Due Process and Equal Protection Clauses of the Fourteenth Amendment, administer this statute so as to deny adequate appellate review to the poor while granting such review to all others." *Id.* at 13, 76 S.Ct. at 588.

In order to get "full direct appellate review" of alleged errors, it was necessary for the appellant to prepare a bill of exceptions, and, as a practical matter, that was impossible to do without a stenographic transcript of the trial proceedings. Except in capital cases, however, criminal defendants needing a transcript, whether indigent or not, were required to purchase it. It was that requirement that served to deny indigent appellants effective appellate review.

Justice Black observed that the ability to pay costs in advance bears no rational relationship to a defendant's guilt or innocence and thus cannot be used as an excuse to deprive a defendant of a fair trial. Nor, he continued, can it be used to effectively deny the poor "an adequate appellate review accorded to all who have money enough to pay the costs in advance." A State is not required by the Federal Constitution to provide a right of appellate review, but if it does provide such a right, it cannot do so in a way that discriminates against some convicted defendants on account of their poverty. The essential holding, expressed at 19, 76 S.Ct. at 590, was that "[d]estitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts." There was, however, an important clarifying comment to that holding. At 20, 76 S.Ct. at 591, Justice Black noted:

"We do not hold, however, that Illinois must purchase a stenographer's transcript in every case where a defendant cannot buy it. The Supreme Court [of Illinois] may find other means of affording adequate and effective appellate review to indigent defendants."

Justice Frankfurter agreed that a State that provides appellate review cannot "draw a line which precludes convicted indigent persons, forsooth erroneously convicted, from securing such review merely by disabling them from bringing to the notice of an appellate tribunal errors of the trial court which would upset the conviction." *Id.* at 23, 76 S.Ct. at 591. His concern was more over the retroactive effect of the Court's ruling, but, in conformance with Justice Black's caveat, he too observed, at 24, 76 S.Ct. at 593, that:

"When a State not only gives leave for appellate correction of trial errors but must pay for the cost of its exercise by the indigent, it may protect itself so that frivolous appeals are not subsidized and public moneys not needlessly spent. The growing experience of reforms in appellate procedure and sensible, economic modes for securing review still to be devised, may be drawn upon to the end that the State will neither bolt the door to equal justice nor support a wasteful abuse of the appellate process."

Citing a number of statutes and an A.L.R. Note (100 A.L.R. 321), Justice Black observed that many States were already providing some aid for convicted defendants who needed a transcript in order to perfect an appeal. Maryland had required the State to prepare the record, including the transcript, for indigent appellants in death penalty cases since 1945. *See* 1945 Md.Laws, ch. 1068; Md.Code (1951) art. 5, § 89. In 1958, the Legislature formally complied with the *Griffin* mandate by extending that right to criminal appellants in non-capital cases. 1958 Md.Laws, ch. 68; Md.Code (1957) art. 5, 15A. The only difference between capital and non-capital cases was that, in the former, the entitlement was automatic upon the filing of an oath "forma pauperis," whereas in the latter not only did the defendant have to file such an oath but the court had to be satisfied that the defendant was, in fact, "unable by reason of poverty to defray the expense of prosecuting an appeal...." *Id.*

Upon the enactment of the 1958 law, the Court of Appeals engrafted those provisions into its Rules, initially as Md.Rule 883 b. When the Court of Special Appeals was created in

1967, the right to have the State pick up the cost of the appeal, including the preparation of a transcript, in non-capital cases was transferred to Md.Rule 1083; the comparable right in capital cases remained in Md.Rule 883. It is evident, then, that since at least 1958, the State was obliged to defray the costs of an appeal, including provision of a transcript, for all indigent appellants in criminal cases.

In 1971, the General Assembly created the Public Defender's Office "to provide for the realization of the constitutional guarantees of counsel in the representation of indigents, including related necessary services and facilities, in criminal and juvenile proceedings within the State...." 1971 Md. Laws, ch. 209. It charged the Public Defender with providing legal representation to indigent persons in criminal and juvenile proceedings, including appeals to this Court and the Court of Appeals, either through staff attorneys employed in the Office or "by an attorney appointed by the Office of the Public Defender." Md.Code art. 27A, § 4(d). To obtain outside attorneys, the Public Defender was directed under § 6(a) to develop and maintain a list of private attorneys "available to serve as counsel to indigent persons eligible for legal representation under this article" and was authorized by § 5(6) to "accept the services of volunteer workers or consultants at no compensation or at nominal or token compensation." The Public Defender is responsible for ascertaining the indigent status of persons seeking representation, which "shall be measured according to the financial ability of the person to engage and compensate competent private counsel and to provide all other necessary expenses of representation." *Id.* at § 7(a).

It has been clear since the enactment of art. 27A that, as part of its representation of indigent persons in the appellate courts, the Public Defender's Office is responsible for obtaining such transcripts as are necessary to prosecute the appeal, and funds for that purpose are included in the annual budget for the Office. The Court of Appeals commented on this obligation and on the nature of transcripts ordered by the Public Defender in *Levene v. Antone,* 301 Md. 610, 484 A.2d

259 (1984). Responding to a certified question from the United States District Court, the Court held that transcripts ordered and paid for by the Public Defender in connection with representing indigent persons on appeal belonged to the Public Defender and not to the client. At 623, it held that "[t]ranscripts are not acquired by the Public Defender simply as agent of [the clients] but in the discharge of his statutory responsibilities to [the clients]." The client had no property interest in them and no right to a free copy of them.

In its Opinion, the *Levene* Court took note of the procedures adopted by the Public Defender with respect to transcripts, among which were (1) if a client wanted a copy of the transcript, he had to pay for it, (2) transcripts would not be lent or given to the client, (3) the Public Defender "will not pay for preparation of transcripts for use in any case in which the defendant, appellant or petitioner has not been found eligible for Public Defender representation *and accepted as a Public Defender client*," and (4) "if a lawyer is retained to represent a Public Defender client on appeal after the transcripts have been purchased by the Public Defender's Office, this office will provide that lawyer with the transcripts *upon receipt of reimbursement for the full cost of preparation of the transcripts.*" *Id.* at 614–15, 484 A.2d 259 (emphasis added). In responding to the certified question as it did, the Court evidently found no problem with these procedures.

In further keeping with the *Griffin* Court's allowance for cost-containment measures, both the Legislature and the Court of Appeals have permitted the Public Defender to retain some control over the fees and expenses of private attorneys who represent indigent persons under contract with the Public Defender. *See* art. 27A, § 6(d), requiring Public Defender approval of such fees and expenses, and current Md.Rule 8–505 (former Rules 831 f. and 1031 e.), requiring that briefs and other documents filed on behalf of an indigent party be reproduced under the supervision of the Public Defender.

Notwithstanding *Levene* and these other cost-containment measures, until 1988 it seemed clear that an indigent criminal

appellant was entitled to a State-provided transcript, whether or not he was represented by the Public Defender. If he was represented by or through that office, the Public Defender ordered the transcript from the court stenographer and paid for it from the funds appropriated for that purpose by the Legislature. If, for whatever reason, the appellant was not represented by the Public Defender but nonetheless could establish his indigence, the court was obliged under Md.Rule 1083 to order the State to pay the cost of preparing the transcript.

The requirement at issue here—that the Public Defender have declined representation—came about as part of the revision of the appellate rules in 1988. The question first arose in 1984 when the Rules Committee was considering, as part of the revision of the Titles 1–4 Rules, what was then proposed Rule 1–325 dealing with the waiver of pre-paid costs. The proposed Rule provided that if, upon affidavit and such other documentation as the court demands, the court is satisfied that a person is unable by reason of poverty to pay the filing fee "or other court costs ordinarily required to be prepaid and the claim, *appeal,* or request for process is not frivolous, it shall waive by order the prepayment of such costs." (Emphasis added.) The question was raised at the Rules Committee meeting of October 12, 1984, whether a transcript qualified as an "other court cost" within the meaning of the proposed Rule, in either civil or criminal cases. The Committee concluded that the Rule should not be construed to permit the waiver of transcript costs in civil cases but left to the appellate subcommittee to consider any changes in the text of that Rule or Rule 1083. The then-chairman noted in the course of the discussion that the Rule applied only to the waiver of pre-payment of the costs and not to the costs themselves.

In March, 1986, the appellate subcommittee recommended a new section (b) to Rule 1–325, as part of the overall revision of the appellate rules. The new section would have provided:

"In a criminal cause, if the court determines that the defendant is unable by reason of poverty to pay the court costs related to an appeal *and that the defendant was*

*declined representation by the Public Defender's Office,* the court shall direct by order the payment by the State of these costs and the costs of preparing any transcript of testimony, briefs, appendices, and record extract necessary in connection with the appeal."

(Emphasis added.)

In an explanatory note, the subcommittee explained that the new section (b) was intended to incorporate into Rule 1–325 the subject matter covered by existing Rules 883 b. and 1083 b., which would be repealed, but that:

"On the recommendation of the Public Defender's Office representative ... who served as a consultant to the Subcommittee, the proposed provision imposes as an additional condition precedent a determination by the court that the defendant has been declined representation by the Public Defender's Office. This requirement is intended to avoid abuse of the Rule by defendants attempting to do an end run around the Public Defender's Office."

When this proposal was presented, several members of the Committee questioned the constitutionality of the additional requirement, especially with respect to defendants wishing to represent themselves on appeal without counsel, *pro se.* One member questioned as well what would happen if an appellant could afford the fees of a private attorney but not the other costs of the appeal. The Committee referred the matter back to the subcommittee with the direction to:

"(1) consider the impact of section (b) on appellants desiring to appear pro se; and (2) consider whether a better means exists of ensuring that deserving appellants will not be absolutely barred from obtaining free transcripts simply because those appellants have retained private attorneys (but have exhausted their financial resources in so doing)."

On June 10, 1986, the Chief Attorney, Appellate Division of the Public Defender's Office, responded to those concerns in a memorandum to the Reporter of the Rules Committee. He defended the constitutionality of the declination of representation requirement on the ground that the State had chosen to

comply with the mandate of *Griffin* through the creation and funding of the Public Defender's Office, and that, if transcripts were to be provided to persons not represented by the Public Defender, "the legislature would apparently have to create a fund to pay for the transcripts and an official, office or agency to administer the fund. . . ." Citing *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) and *Callahan v. State,* 30 Md.App. 628, 633, 354 A.2d 191 (1976), the Public Defender urged that there was no constitutional right to self-representation on appeal, and therefore no constitutional right to a State-provided transcript in a self-representation case.

With respect to indigent appellants being represented by private counsel, the Public Defender drew a distinction between counsel acting on a *pro bono* basis and those being paid a fee. As to the former, the memo stated:

"The proposed rule would not be an obstacle to the indigent appellant who wants to proceed with pro bono counsel. It has been the practice of the Public Defender's Office to cooperate with individual attorneys, law schools and other organizations willing to provide pro bono representation to indigent appellants. This cooperative arrangement has not presented problems in the past."

The situation of an appellant "who has funds sufficient to hire a lawyer for appeal but not enough to also purchase a transcript," he continued, "presents a different problem." He noted the provision in art. 27A, § 7(c) that, where a defendant has the means to meet "some part of the expenses for services rendered to him," he is required to reimburse the Public Defender "such amounts as he can reasonably be expected to pay," and said that, in light of that provision, it was the Public Defender's position that, where an appellant has funds available, those funds "should be applied to reduce the costs incurred by the State in providing him with legal services." He stated that the Office would not pay for the preparation of transcripts for individuals who are represented by private counsel and observed that, in some cases, the funds paid as a fee to hire counsel for appeal would exceed both the cost of the transcript and the cost to the State of providing counsel

through the Public Defender's Office. His view was that the question of whether there should be alternative means to accommodate the desire of such a person to proceed with both private counsel *and* State assistance should be left to the Legislature.

The subcommittee was satisfied with the Public Defender's response and recommended no change in the proposed Rule. That recommendation was presented to the full Committee at its September, 1986 meeting and, with certain other changes not relevant here, the Rule was approved as recommended. In that form, it was submitted to the Court of Appeals in the 97th Report of the Rules Committee together with a Reporter's Note identical to the explanatory note attached to the initial subcommittee recommendation. The Court was thus informed that the additional condition had been added at the recommendation of the Public Defender's Office "to forestall abuse of the Rule by defendants attempting to do an 'end run' around the Public Defender's Office." The Court directed that the Rule be redrafted to its present form, but made no substantive change, and it was therefore approved as it now exists, to take effect July 1, 1988.

We have recounted this legislative history to demonstrate that the issue raised by appellant was, indeed, considered in the drafting of the Rule. The Court had before it the existing Rules, art. 27A, its earlier decision in *Levene*, and the basis for the new requirement.

We need not consider here whether an appellant proceeding entirely without counsel would be Constitutionally entitled to a State-provided transcript, for appellant is not in that position. Nor need we consider the problem, which was of direct concern to both the Public Defender and the Rules Committee, of an appellant who has sufficient funds to employ private counsel on a fee-for-service basis, but not enough to pay for a transcript as well, for appellant is not in that position either. He is, so far as we know, being represented by Mr. Bray on a *pro bono* basis, without fee.

The Public Defender impliedly asserted to the Rules Committee, when it was considering an amendment to the proposed Rule in light of the concerns expressed by some of its members, that he had no objection to providing a transcript for appellants who are being represented on that basis, and that the proposed Rule did not need to be amended to cover that situation. The Committee, and later the Court, responded accordingly, and so we must assume that the Rule was intended to be construed in that manner. Accordingly, we hold that, where an indigent appellant who otherwise would qualify for representation by the Public Defender chooses to be represented by a qualified private attorney and that attorney elects to represent the appellant without fee of any kind or from any person, strictly on a *pro bono* basis, the Public Defender is obliged to provide the necessary transcript and, subject to Md.Rule 8–505, pay the cost of the brief and other necessary documents as well.

Appellant raises one other question—whether the circuit court had the authority to waive this Court's filing fee—but that issue is moot, as the fee was waived by this Court.

ORDER OF AUGUST 17, 1993 REVERSED; STATE TO PROVIDE THROUGH OFFICE OF PUBLIC DEFENDER TRANSCRIPT AND OTHER DOCUMENTS PURSUANT TO MD.RULES 1–325 AND 8–505; COSTS OF THIS PROCEEDING TO BE PAID BY HOWARD COUNTY.