651 A.2d 845

STATE of Maryland, et al.

v.

Bernard MILLER.

No. 1, Sept. Term, 1994.

Court of Appeals of Maryland.

Dec. 16, 1994.

Reconsideration Denied Feb. 3, 1995.

Evelyn O. Cannon, Asst. Atty. Gen., (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for petitioner.

Laurack D. Bray, Washington, DC, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

KARWACKI, Judge.

This case presents the question of whether an indigent defendant who appeals from his conviction of a crime is

entitled to receive a free stenographic transcript of the trial proceedings if, in connection with the appeal, he has neither sought the assistance of, nor been refused representation by, the Public Defender. We shall answer that question in the negative.

## I

In the Circuit Court for Howard County Bernard Miller was charged with the kidnapping, robbery, and murder of Pamela Basu and other related offenses. The Public Defender offered to represent him at trial, but Miller declined and chose to be represented by Laurack D. Bray, Esq., a member of the bar of the District of Columbia, who was willing to furnish his services on a *pro bono* basis. The Circuit Court admitted Mr. Bray to do so *pro hac vice.*

Miller was convicted of several offenses, including felony murder, and sentenced to imprisonment for life plus ten years. He noted an appeal from those judgments and filed a motion in the circuit court requesting that the State pay for a transcript of the trial proceedings. Miller refused to request representation by the Public Defender, and Mr. Bray refused to seek appointment by the Public Defender as an assigned public defender to represent Miller on appeal under the supervision of the Public Defender. Mr. Bray, at oral argument before this Court, reasserted that refusal, explaining that his client did not want the office of the Public Defender involved in any way with his case. The trial court based its ruling on Maryland Rule 1-325(b) which provides, in pertinent part:

"The court shall order the State to pay the court costs related to an appeal ... and the costs of preparing any transcript of testimony, brief, appendices, and record extract necessary in connection with the appeal, in any case in which (1) the Public Defender's Office is authorized by these rules or other law to represent a party, (2) the Public Defender has declined representation of the party, and (3) the party is unable by reason of poverty to pay those costs."

As Miller's *pro bono* counsel would continue to represent him on appeal, and he had not sought representation by the Public Defender, the trial court denied his motion. Miller appealed that denial to the Court of Special Appeals.

The intermediate appellate court held that "where an indigent appellant who otherwise would qualify for representation by the Public Defender chooses to be represented by a qualified private attorney and that attorney elects to represent the appellant without fee of any kind or from any person, strictly on a *pro bono* basis, the Public Defender is obliged to provide the necessary transcript and, subject to Md. Rule 8–505, pay the cost of the brief and other necessary documents as well." *Miller v. State,* 98 Md.App. 634, 645, 635 A.2d 1, 6 (1993). In reaching this conclusion, the Court of Special Appeals interpreted the legislative history of Md. Rule 1–325(b) as evincing an intent to provide a transcript in precisely this type of case. The court reached its decision based solely upon its construction of Md. Rule 1–325(b) and did not address the issues raised by Miller as to the constitutionality of that rule.

The State petitioned this Court for a writ of certiorari and moved to stay enforcement of the mandate of the Court of Special Appeals. The Office of the Public Defender moved to intervene, and Miller filed a cross-petition for certiorari. We granted the Public Defender's motion to intervene and the State's motion to stay and issued our writ of certiorari upon both petitions to consider whether Md. Rule 1–325(b) requires that Miller receive a free transcript and, if not, whether the rule violates Miller's federal constitutional rights to equal protection of the laws and assistance of counsel.

## II

Under *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), a state is required to provide as adequate an appellate review to an indigent defendant as would be available to a defendant able to afford a transcript. If a transcript of the trial proceedings is necessary for an appeal, therefore, a

state cannot refuse to provide the transcript based *solely* on a defendant's indigence, thereby foreclosing all opportunity for appellate review. *Id.* at 18–19, 76 S.Ct. at 590–91, 100 L.Ed. at 898–99. Nevertheless, Justice Black, in his plurality opinion explaining the judgment, pointed out:

> "We do not hold, however, that Illinois must purchase a stenographer's transcript in every case where a defendant cannot buy it. The Supreme Court may find other means of affording adequate and effective appellate review to indigent defendants."

*Id.* at 20, 76 S.Ct. at 591, 100 L.Ed. at 899. Furthermore, Justice Frankfurter, in his concurring opinion, emphasized this right of the states to condition their duty to provide free transcripts upon reasonable cost-containment measures:

> "When a State not only gives leave for appellate correction of trial errors but must pay for the cost of its exercise by the indigent, it may protect itself so that frivolous appeals are not subsidized and public moneys not needlessly spent. The growing experience of reforms in appellate procedure and sensible, economic modes for securing review still to be devised, may be drawn upon to the end that the State will neither bolt the door to equal justice nor support a wasteful abuse of the appellate process."

*Id.* at 24, 76 S.Ct. at 593, 100 L.Ed. at 901–02.

Miller claims that *Griffin* mandates that an indigent defendant receive a free transcript when represented by private, *pro bono* counsel other than an attorney working under the supervision of the Public Defender. Further, he asserts that the requirement in Md. Rule 1–325(b) that he be represented by, or denied representation by, the Public Defender's Office before he can receive a free transcript denies him equal protection of the laws and genuine and effective assistance of counsel.

The State responds that Miller *is* entitled to a free transcript, but not on his own terms. Contending that Maryland's method of supplying indigent appellants in criminal cases a free transcript of the trial proceedings complies with the

*Griffin* mandate, the State asserts that Md. Rule 1–325(b) is a reasonable restriction on the exercise of an indigent appellant's right to appeal.

### III

Md. Rule 1–325(b) traces its roots back to 1945, when Maryland required the State to prepare a transcript for indigent appellants in capital criminal cases. *See* Ch. 1068 of the Acts of 1945, codified as Maryland Code (1939, 1947 Cum.Supp.), Art. 5, § 88A. In 1958, complying with the *Griffin* mandate, the General Assembly extended that right to include appellants in non-capital cases. Ch. 68 of the Acts of 1958, codified as Md.Code (1957, 1963 Cum.Supp.) Art. 5, § 15A. Also in 1958, we incorporated those same provisions into the Rules, obligating the State to provide a free transcript for indigent appellants in *all* criminal cases. *See* Maryland Rule 883 b (1958).

In 1971, the General Assembly created the Office of the Public Defender. Ch. 209 of the Acts of 1971. As now codified, the Legislature provided:

"It is hereby declared to be the policy of the State of Maryland to provide for the realization of the constitutional guarantees of counsel in the representation of indigents, *including related necessary services and facilities*, in criminal and juvenile proceedings within the State, and to assure effective assistance and continuity of counsel to indigent accused taken into custody and indigent defendants in criminal and juvenile proceedings before the courts of the State of Maryland, and to authorize the Office of Public Defender to administer and assure enforcement of the provisions of this article in accordance with its terms."

Md.Code (1957, 1993 Repl.Vol.),[1] Art. 27A, § 1 (emphasis added).

---

1. All further references to Article 27 will be to this edition of the Maryland Code.

"It shall be the primary duty of the Public Defender to provide legal representation for any indigent defendant eligible for services under this article. Legal representation may be provided by the Public Defender, or, subject to the supervision of the Public Defender, by his deputy, by district public defenders, by assistant public defenders, or by panel attorneys as hereinafter provided for."

Md.Code (1957, 1993 Repl.Vol., 1994 Cum.Supp.), Article 27A, § 4(a).

"(a) Each district public defender, subject to the authority and supervision of the Public Defender, shall maintain a confidential list of private attorneys-at-law who shall be available to serve as counsel to indigent persons eligible for legal representation under this article. The attorneys on each list shall be classified into various panels pursuant to qualification criteria set forth by the Public Defender. Such criteria shall be based upon the nature and complexity of the type of offense requiring legal representation, the previous trial or appellate experience of the attorneys, and any other factors considered necessary to insure competent legal representation.

(b). Except in those cases where representation is provided by an attorney in the Office of the Public Defender, the district public defender, subject to the supervision of the Public Defender, shall appoint attorneys from the appropriate panels to represent indigent persons. The maximum use of panel attorneys shall be made insofar as practicable.

(c) The primary duty of all panel attorneys appointed by the Office of the Public Defender shall be to the individual defendant, with like effect and to the same purpose as though privately engaged by the indigent person and without regard to the use of public funds to provide the service. This shall not preclude the designation or assignment of different individuals to perform various parts of the service from time to time. A panel attorney who is assigned to represent an indigent person under this article shall report to the Office of the Public Defender on his representation of

the indigent person, as prescribed by rules of the Public Defender."

Md.Code (1957, 1993 Repl.Vol.), Art. 27A, § 6.

In 1988, Md. Rule 1–325(b) was adopted, incorporating prior Rules 883 b and 1083 b.[2] The requirement that the Public Defender refuse representation before a free transcript will be provided to defendants not represented by that office was added to "avoid abuse of the Rule by defendants attempting to do an end run around the Public Defender's Office." Rules Committee March 14–15, 1986, Minutes at 50.

Before recommending Md. Rule 1–325(b), the Committee specifically considered the constitutionality of the new requirement, expressing concern with defendants who wish to proceed pro se on appeal, who retain *pro bono* counsel, or who can afford to retain private counsel, but cannot then afford to pay for a transcript. In response to the Committee's concerns, the Chief Attorney, Appellate Division of the Public Defender's Office, defended the constitutionality of the proposed Rule, and specifically addressed the situation at issue in this case:

"The proposed rule would not be an obstacle to the indigent appellant who wants to proceed with pro bono counsel. It has been the practice of the Public Defender's Office to cooperate with individual attorneys, law schools and other organizations willing to provide pro bono representation to indigent appellants. This cooperative arrangement has not presented problems in the past."

Memorandum from Dennis M. Henderson, Chief Attorney, Appellate Division, Office of the Public Defender, to Julia M. Freit, Reporter, Rules Committee, p. 6 (June 10, 1986). His opinion was that the Rule was constitutional as drafted and that the question of whether an alternative system for provid-

---

**2.** Provision for transcripts in non-capital cases was transferred to Rule 1083 in 1967. Transcripts in capital cases were still covered under Rule 883.

ing transcripts to those desiring to proceed with private counsel should be created was one best left to the Legislature.

The Rules Committee recommended no further change in the Rule and submitted it to the Court of Appeals with the new requirement intact. This Court approved the Rule with only minor changes, to take effect July 1, 1988.

The Court of Special Appeals construed the Rules Committee's adoption of the Rule with no further changes after receiving the Chief Attorney's memorandum as evidence of an intent that Md. Rule 1–325(b) require that the Public Defender supply an indigent defendant with a transcript of the trial proceedings where, as here, the indigent does not want *pro bono* counsel under any supervision by the Public Defender in conducting the appeal. The Rules Committee was clearly concerned with the constitutionality of conditioning the receipt of a free transcript upon application to the Public Defender for representation. The Court of Special Appeals interpreted the Chief Attorney's description of the procedures used in the Office of the Public Defender as a recommendation that the Rule as drafted would require provision of a transcript to an indigent appellant represented by *pro bono* counsel:

> "The Public Defender impliedly asserted to the Rules Committee, when it was considering an amendment to the proposed Rule in light of the concerns expressed by some of its members, that he had no objection to providing a transcript for appellants who are being represented on that basis, and that the proposed Rule did not need to be amended to cover that situation. The Committee, and later the Court, responded accordingly, and so we must assume that the Rule was intended to be construed in that manner."

*Miller v. State*, 98 Md.App. 634, 645, 635 A.2d 1, 6 (1993).

We disagree with the interpretation of the Court of Special Appeals. The Chief Attorney was merely explaining that it is common practice for the Public Defender to make arrangements with *pro bono* counsel for provision of a free transcript. In light of the availability of such a "cooperative arrangement," the Chief Attorney correctly stated that "[t]he pro-

posed rule would not be an obstacle" to such an appellant. His statement that the Public Defender has "no objection" to providing a transcript in such a situation, however, cannot be equated with a recommendation that Md. Rule 1–325(b) *mandates* provision of a transcript.

■ The clear requirement of Md. Rule 1–325(b) is that Miller must apply to the Public Defender and be represented by, or refused representation by, that office before he can receive a free transcript. Nothing in the legislative history of the Rule suggests otherwise. Md. Rule 1–325(b) is simply an extension of the procedural framework provided in Art. 27A of the Md.Code. The Office of the Public Defender was created specifically to provide the resources necessary for an indigent appellant to proceed effectively with an appeal, and Md. Rule 1–325(b) protects State resources by using the Public Defender as a "gatekeeper" who ensures that those resources are not wasted or abused.[3]

■■ Moreover, this requirement furthers the intent of the Legislature that an attorney, whether acting *pro bono* or for a fee to be paid from the Public Defender budget, is qualified to furnish effective assistance of counsel to the indigent, Art. 27A, § 6(a), *supra,* and that such attorney, if qualified, delivers that assistance in a competent manner, Art. 27A, § 6(c). The Public Defender has demonstrated over the last 22 years that it is willing, given a demonstration of competence, to designate private counsel acting *pro bono* as a panel attorney if requested by the indigent defendant. The instant case demonstrates vividly how the legislative will can be frustrated by an indigent who for unspecified reasons has adamantly refused to cooperate in any way with the Public Defender. Md. Rule 1–325(b) expressly prevents such non-

---

3. Under the Public Defender System, control over expenditures for transcripts of the trial proceedings is the province of the Public Defender, who insures that the stenographic notes or electronic record of those portions of the proceedings which will not be at issue on appeal will not be transcribed. Also, Art. 27A, § 7 provides for repayment of the costs of representing the indigent on appeal, or some part thereof, in the event that the indigent later acquires an ability to pay.

cooperation, which could lead to an appeal ineffectively conducted and a further expenditure of funds for a second appeal.

■ "[T]he right of appeal may be accorded by the State to the accused upon such terms as in its wisdom may be deemed proper." *McKane v. Durston*, 153 U.S. 684, 687–88, 14 S.Ct. 913, 915, 38 L.Ed. 867, 868 (1894). Maryland provides the right of appeal under the terms set forth in Art. 27A and the Maryland Rules, and the Rules require an indigent to apply for representation by the Office of the Public Defender before he can receive a free transcript.

### III

We now turn to the federal constitutional questions raised by Miller in his cross-petition, namely whether his rights to equal protection of the laws and assistance of counsel have been violated.[4] In *Griffin, supra*, the defendants were convicted of armed robbery and requested that a copy of the entire record, including a transcript of the proceedings, be provided for an appeal without cost. Under Illinois law, an indigent defendant could obtain a transcript for appellate review of constitutional questions and any issue in a capital case, but not of any other alleged errors in non-capital cases. The defendants alleged that denial of the transcript based on their indigence amounted to a denial of due process and equal protection.

The Supreme Court agreed, holding that the State must provide as adequate an appellate review to indigents as non-indigents. The defendants were denied appellate review of non-constitutional questions in a non-capital case that would otherwise be reviewed if they could afford a transcript. Thus, an opportunity available to non-indigent defendants was being denied to indigent defendants based solely on that status, and the Court held that completely cutting off an indigent defen-

---

4. The assistance of counsel issue was not raised in the trial court, but we will exercise our discretion under Md.Rule 8–131(a) and address the issue. *See Atlantic Mut. Ins. Co. v. Kenney*, 323 Md. 116, 123, 591 A.2d 507, 510 (1991).

dant from appellate review in such a manner denied the indigent defendant equal protection of the laws. States, however, would be allowed to place reasonable restrictions on the exercise of the right to a necessary transcript for appeal. *Griffin,* 351 U.S. at 20, 76 S.Ct. at 591, 100 L.Ed. at 899.

Allowing the states to create reasonable alternative systems by which the constitutional rights of indigents would be protected is a concept that has been applied to other rights of indigent defendants as well. In *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) the Supreme Court addressed whether indigent prisoners must be provided access to a law library so that they can file petitions for post-conviction relief. The Court, after discussing an indigent's right to "meaningful access" to the courts, noted that alternative systems of providing constitutionally-required resources are acceptable:

> "It should be noted that while adequate law libraries are one constitutionally acceptable method to assure meaningful access to the courts, our decision here ... does not foreclose alternative means to achieve that goal.... Among the alternatives ... [is] the use of full-time staff attorneys, working either in new prison legal assistance organizations or as part of public defender or legal services offices. Legal services plans ... result in more efficient and skillful handling of prisoner cases ..."

*Id.* at 830-31, 97 S.Ct. at 1499-1500, 52 L.Ed.2d at 84-85. This is precisely the type of system which the Legislature has created under Art. 27A. The State provides constitutionally-required resources to indigent appellants through the Public Defender system, which protects both indigents and the State by guaranteeing effective assistance of counsel while preventing abuse of resources. We emphasized these goals of the Public Defender system in *Levene v. Antone,* 301 Md. 610, 484 A.2d 259 (1984), where we held that the indigent defendant had no property interest in the transcript prepared at the direction of the Public Defender for use in connection with the indigent's appeal.

The Supreme Court later clarified what has become known as the *"Griffin* principle" when examining indigent defendants' access to other resources:

> "The Fourteenth Amendment 'does not require absolute equality or precisely equal advantages,' ... nor does it require the State to 'equalize economic conditions.' ... It does require that the state appellate system be 'free of unreasoned distinctions,' ... and that indigents have an adequate opportunity to present their claims fairly within the adversary system.... The State cannot adopt procedures which leave an indigent defendant 'entirely cut off from any appeal at all,' by virtue of his indigency, ... or extend to such indigent defendants merely a 'meaningless ritual' while others in better economic circumstances have a 'meaningful appeal.' ... The question is not one of absolutes, but one of degrees."

*Ross v. Moffitt,* 417 U.S. 600, 612, 94 S.Ct. 2437, 2444–45, 41 L.Ed.2d 341, 352 (1974) (citations omitted). To answer the question of whether Miller has been denied equal protection of the laws based on his status as an indigent, therefore, we need only compare the appellate rights available to indigent and non-indigent defendants in this State.

▮ Both indigents and non-indigents have the right to appeal after a conviction, and neither automatically has the right to choice of counsel, *see, e.g., Ungar v. Sarafite,* 376 U.S. 575, 590–91, 84 S.Ct. 841, 850, 11 L.Ed.2d 921, 931–32 (1964), or the right to proceed *pro se* on appeal, *see Price v. Johnston,* 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356, 1369 (1948). The only difference is that the indigent defendant must proceed on appeal through the Office of the Public Defender. The *Griffin* principle has not been violated in the instant case because Miller has not been completely denied the appellate process; he may still apply to the Office of the Public Defender and receive representation and a transcript for his appeal.

▮ *Griffin* is often quoted for the proposition that "[t]here can be no equal justice where the kind of trial a man gets

depends on the amount of money he has." *Griffin,* 351 U.S. at 19, 76 S.Ct. at 591, 100 L.Ed. at 899. In the instant case, the kind of appeal Miller will get does not depend on the amount of money he has; it depends on his willingness to cooperate and follow the reasonable procedures set forth in Art. 27A and the Maryland Rules. But for his intransigence, this system would work, and Miller would receive a free transcript.

Even if the Office of the Public Defender refuses to represent an indigent defendant, his right to appellate review still remains intact. The court may appoint counsel, and Md. Rule 1–325(b) specifically is intended to provide a transcript in such a case. One of the purposes of Md. Rule 1–325(b) is to ensure that an indigent defendant's constitutional rights are protected even when representation outside the Office of the Public Defender is necessary.

Miller relies heavily on *Lane v. Brown,* 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963), in arguing that a free transcript must be provided to all indigent defendants. *Lane,* however, is clearly distinguishable from the case at bar and actually reinforces the principle that complete preclusion of appellate review is what must be prevented under *Griffin.*

In *Lane,* the Public Defender had the power to determine whether the defendant would receive *any* appellate review. If the Public Defender refused to represent the defendant, there could be no appellate review, because the defendant could not then receive a transcript. In this case, however, Miller was entitled to a transcript regardless of his representation by the Public Defender. If the Public Defender had refused to represent him, he could still get a transcript under Md. Rule 1–325(b). It is only when he fails to follow the procedures set forth in the rules and statutes that he must proceed without the transcript. Under the facts in *Lane,* the purpose of Md. Rule 1–325(b) becomes clear; it was designed to *comply* with the *Griffin* mandate. The statutes, rules, and practice in place in Maryland work well to provide effective assistance of counsel to indigent defendants. Miller *is* entitled to a free transcript, but he cannot receive it on his own terms;

he must go through the Office of the Public Defender. The State is free to place reasonable restrictions on the exercise of Miller's rights, and Rule 1–325(b) is neither arbitrary nor unreasonable in its language or application. There can be no equal protection violation when an individual is denied a right simply because of his own failure to comply with reasonable state procedures and regulations.

## IV

■ Miller also asserts that Rule 1–325(b) denies his right to assistance of counsel. An indigent defendant, under the Sixth and Fourteenth Amendments, has a right to effective assistance of counsel at trial in his criminal prosecution in federal or state court. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). He also has a right to represent himself at trial, if he so chooses. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Once a defendant is qualified as indigent, he is assigned counsel from the Public Defender's Office. If, due to a conflict of interest, the Public Defender's Office cannot represent the defendant, an independent panel attorney will be assigned to the case. Art. 27A, § 6(b).

■ The indigent defendant, however, does not have an absolute right to *choice* of counsel:

"Thus, while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."

*Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140, 148 (1988). The Sixth and Fourteenth Amendments guarantee genuine and effective assistance of counsel, but not necessarily what the defendant considers the *best* representation. "[F]or indigent defendants ... the right to counsel is but a right to effective legal representation; it is

not a right to representation by any particular attorney." *Fowlkes v. State,* 311 Md. 586, 605, 536 A.2d 1149, 1159 (1988).

If convicted, the indigent defendant has a right to appeal, but once the appellate level is reached, his or her rights to counsel differ. There is a right to appointed counsel, *see, e.g., Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), and an indigent appellant still does not necessarily have the right to *choice* of counsel. The appellant, however, is no longer automatically permitted the right to proceed *pro se;* this is a matter of discretion with the appellate court. *See Price v. Johnston,* 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356, 1369 (1948) (a convicted person "has no absolute right to argue his own appeal ... in sharp contrast to his recognized privilege of conducting his own defense at the trial."); *Callahan v. State,* 30 Md.App. 628, 633, 354 A.2d 191, 194 (1976) ("the question of whether an appellant may ... argue his own case on appeal involves no matter of right, but is addressed to the discretion of the appellate court.").

Failure to provide a free transcript to the indigent appellant cannot interfere with the right to choice of counsel where no such absolute right exists. In the absence of such a right to choice of counsel, there is no constitutional violation when the State requires that an indigent defendant avail himself of the services of the Office of the Public Defender in order to obtain a free transcript.

The State has set up a system by which all indigent appellants are provided effective assistance of counsel, whether represented by the Public Defender's Office or by a private attorney under the supervision of that office. Miller cannot pick and choose which of the State-provided services he wishes to receive; he must accept the available resources as provided under Art. 27A and the Maryland Rules. Miller has not been denied his right to assistance of counsel, because he may apply to the Office of the Public Defender and receive effective representation. The Public Defender system is Maryland's "alternative solution" as described in *Griffin* and *Bounds,*

*supra.* Public Defender representation, like a transcript, is part of the "package" provided by the State, and requiring Miller to comply with reasonable State procedures in no way infringes upon his right to assistance of counsel.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTION TO AFFIRM THE AUGUST 17, 1993 ORDER OF THE CIRCUIT COURT FOR HOWARD COUNTY. COSTS TO BE PAID BY RESPONDENT AND CROSS-PETITIONER.*