NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough–northern judicial district
No. 2013-251

THE STATE OF NEW HAMPSHIRE

v.

HEIDI BROUILLETTE

Argued: March 5, 2014
Opinion Issued: July 11, 2014

Joseph A. Foster, attorney general (Stephen D. Fuller, senior assistant attorney general, on the brief and orally), for the State.

Sakellarios and Associates, LLC, of Manchester (Olivier Sakellarios on the brief and orally), for the defendant.

John C. Mooney, of Rocky Point, New York, by brief, as amicus curiae.

Getman, Schulthess & Steere, PA, of Manchester (Andrew R. Schulman on the brief), and Brennan, Caron, Lenehan & Iacopino, of Manchester (Michael J. Iacopino on the brief), for the New Hampshire Association of Criminal Defense Lawyers, as amicus curiae.

New Hampshire Civil Liberties Union, of Concord (Gilles R. Bissonnette on the brief), and Albert E. Scherr, of Concord, by brief, for the New Hampshire Civil Liberties Union, as amicus curiae.

LYNN, J. This is an interlocutory appeal from an order of the Superior Court (Brown, J.) denying the motion for services other than counsel filed by the defendant, Heidi Brouillette. See Sup. Ct. R. 8. We reverse and remand.

I

We accept the facts as presented in the interlocutory appeal statement and rely upon the record for additional facts as necessary. See State v. Hess Corp., 159 N.H. 256, 258 (2009). The defendant is charged with one count each of: burglary, see RSA 635:1 (2007); second degree assault, see RSA 631:2 (Supp. 2013); and criminal mischief, see RSA 634:2 (Supp. 2013). At the time of her arraignment, the defendant applied for appointed counsel. Based upon her financial affidavit, the trial court determined that she was indigent and qualified for appointed counsel. However, prior to February 2013 the defendant retained private counsel and appointed counsel withdrew from the case. In that month, the defendant stated her intent to plead not guilty by reason of insanity, and filed a motion for services other than counsel requesting funds for an expert psychological evaluation. She attached a financial affidavit to her motion to support her claim of indigence.

In denying the defendant's motion, the trial court stated: "Attorney Sakellarios is a retained counsel, not court-appointed and, thus, the court cannot order the expenditure of funds." The court went on to explain: "The Court recognizes that initially the defendant qualified for and was appointed [the] Public Defender. Upon the court's receipt of [the] Public Defender's Withdrawal and the appearance of current counsel, an ability to pay is presumed." The trial court concluded by stating that it would reevaluate whether services other than counsel were warranted if the public defender were reassigned to the defendant's case, but that, otherwise, she would have to obtain services other than counsel at her own expense. The record does not show that the trial court reviewed the defendant's attached financial affidavit in reaching its conclusion. The defendant filed a motion for reconsideration, which the trial court denied. With the trial court's approval, the defendant then sought interlocutory review of the court's ruling, and we granted her request.

2

II

The superior court transferred the following question for our consideration:

Does the right to assistance of counsel, due process of law and equal protection under the law require that an indigent defendant, who is not represented by appointed counsel, be provided with funding for necessary services other than counsel?

This question specifically asks whether RSA 604-A:6 (Supp. 2013), which deals with funding for services other than counsel, violates the State and Federal Constitutions. "Because we decide cases on constitutional grounds only when necessary, when a claim of error is based upon both a statutory provision and a constitutional provision, we first will address the statutory argument." State v. Addison, 165 N.H. 381, 418 (2013).

"The interpretation of a statute is a question of law, which we review de novo." State Employees' Assoc. of N.H. v. State of N.H., 161 N.H. 730, 738 (2011). "In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." Addison, 165 N.H. at 418. "We first examine the language of the statute and ascribe the plain and ordinary meanings to the words used." Id. "Absent an ambiguity we will not look beyond the language of the statute to discern legislative intent." Id. "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language it did not see fit to include." Id. "Our goal is to apply statutes in light of the policy sought to be advanced by the entire statutory scheme." Id. "Accordingly, we interpret a statute in the context of the overall statutory scheme and not in isolation." Id.

RSA 604-A:6 states, in pertinent part:

In any criminal case in which counsel has been appointed to represent a defendant who is financially unable to obtain investigative, expert or other services necessary to an adequate defense in his case, counsel may apply therefor to the court, and, upon finding that such services are necessary and that the defendant is financially unable to obtain them, the court shall authorize counsel to obtain the necessary services on behalf of the defendant.

The trial court apparently interpreted this section as allowing a court to approve funding for services other than counsel only if an indigent criminal defendant is represented by appointed counsel. This reading fails to take into

3

account the overall statutory scheme, which is outlined in the legislature's express declaration of purpose for RSA chapter 604-A:

> The purpose of this chapter is to provide adequate representation for indigent defendants in criminal cases, as a precondition of imprisonment . . . .  Representation <u>shall</u> include counsel and investigative, expert and other services and expenses, including process to compel the attendance of witnesses, as may be necessary for an adequate defense before the courts of this state.

RSA 604-A:1 (Supp. 2013) (emphasis added); <u>see</u> <u>Opinion of the Justices</u>, 141 N.H. 562, 568 (1997) ("A legislative declaration of purpose is ordinarily accepted as a part of the act.").  In guaranteeing an adequate defense for all indigent criminal defendants, the declaration of purpose — in plain language — focuses upon only two considerations:  (1) the defendant's indigency; and (2) the necessity of the requested services to an adequate defense.  <u>See</u> <u>State v. Burns</u>, 4 P.3d 795, 801 (Utah 2000) ("[T]he only deciding factors of eligibility for [expert] assistance are that the defendant in a criminal case be <u>indigent</u> and that the investigatory and other facilities be <u>necessary</u> to a complete defense.").  RSA 604-A:1 does not condition this guarantee upon, or limit it to, situations in which the defendant has appointed counsel.  To the contrary, the statutory language shows that its goal of adequate representation applies broadly to "indigent defendants in criminal cases," and generally includes "counsel and investigative, expert and other services and expenses . . . as may be necessary for an adequate defense."  RSA 604-A:1.

The New Hampshire Association of Criminal Defense Lawyers, appearing as amicus, submits that the use of the word "shall" in the declaration of purpose "suggests that no other provision of the Chapter should be casually construed to deprive a class of indigent criminal defendants of this statutory right."  <u>See</u> <u>Asmussen v. Comm'r, N.H. Dep't of Safety</u>, 145 N.H. 578, 586 (2000) (statutes will not be construed in a way that "nullifies, to an appreciable extent," their evident purpose).  We agree.  When read in the context of the overall statutory scheme, RSA 604-A:6 is best understood simply as the procedure the trial court must follow when indigent criminal defendants, <u>who are represented by appointed counsel</u>, seek funding for services other than counsel.  On the other hand, the legislature's general statement of purpose found in RSA 604-A:1 guides the court when a criminal defendant without appointed counsel petitions the court for funding for such services:  If the defendant is indigent — despite the lack of appointed counsel — and the services are necessary, the defendant falls within the statute's guarantee of an adequate defense, and the court should act accordingly.  <u>See</u> <u>Arnold v. Higa</u>, 600 P.2d 1383, 1385 (Haw. 1979) ("While the statute contains certain provisions relating solely to a defendant represented by the public defender or certain court-appointed counsel, the statutory language does not in any way

4

limit the court's authority to approve funds for investigatory services for a defendant with private counsel.").

RSA 604-A:6 cannot be read as prohibiting a court from authorizing necessary services to indigent criminal defendants who are self-represented, or who have pro bono, reduced fee, or retained counsel. To condition fulfillment of the statute's goal of providing adequate representation to all indigent criminal defendants upon the existence of appointed counsel grafts language onto the statute that the legislature did not see fit to include. See Addison, 165 N.H. at 418. Moreover, by excluding an entire class of indigent defendants from receiving such services, this interpretation frustrates the policy that the legislature sought to advance by the overall statutory scheme. See id. We also note that, although the State supports the interpretation of RSA 604-A:6 adopted by the trial court, it does not assert that construing the statute to condition state-funded services other than counsel on representation by appointed counsel furthers some fiscal or efficiency goals that the legislature had in mind when it enacted the legislation.

Other courts have likewise held that the absence of a prohibitory clause in similar statutes supports an interpretation that permits payment for necessary services for indigent defendants even when they do not have appointed counsel. See, e.g., Arnold, 600 P.2d at 1385; Burns, 4 P.3d at 800. In Burns, for example, the Utah Supreme Court considered whether a trial court could require a defendant to accept appointed counsel to qualify for other state-funded assistance. Burns, 4 P.3d at 798. In holding that appointed counsel was not a prerequisite to a defendant receiving necessary services, the court focused on the statutory minimum standards available to indigent defendants — standards that mirror the stated purpose of RSA chapter 604-A in this case. Id. at 800. "[I]t is clear from the plain language of [the standards] that a county must provide the investigatory and other facilities necessary for a complete defense to every indigent person, not just to those represented by [appointed counsel]." Id. at 800-01 (quotations and brackets omitted). The court further stated that "there is nothing in the [relevant statutory] section that conditions availability of these basic tools of defense on acceptance" of appointed counsel. Id. at 801. The court concluded, as we do here, that there are only two statutory requirements to receiving public assistance for services: the defendant's indigency and the necessity of the requested services. Id. These two considerations, rather than the particulars of the manner in which the defendant secures counsel, are at the core of a statutory scheme that, like the one here, is meant to ensure an adequate defense for indigent criminal defendants.

We recognize that the fact that a criminal defendant has retained counsel, rather than appointed counsel, may bear upon the question of whether he or she qualifies as indigent; and nothing in this opinion is intended

to limit a trial court's authority to make such inquiries, as it deems necessary, to ensure both that a criminal defendant is indigent and that the services requested are necessary before it approves such a request. See Arnold, 600 P.2d at 1385 ("An inquiry into the circumstances behind Petitioner's change in counsel and a determination whether he could afford additional litigation expenses should have been made.").

Because we hold that RSA 604-A:6 does not prohibit receipt of funds for services other than counsel by indigent criminal defendants who are not represented by appointed counsel, we have no occasion to consider whether a contrary construction of the statute would violate the defendant's rights under the State or Federal Constitutions. See State v. Berrocales, 141 N.H. 262, 264 (1996) (stating that it is "our long-standing policy not to decide questions of a constitutional nature unless absolutely necessary" (quotation omitted)). Accordingly, we reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

CONBOY and BASSETT, JJ., concurred; DALIANIS, C.J., with whom HICKS, J., joined, dissented.

DALIANIS, C.J., dissenting. This is an interlocutory appeal from an order of the Superior Court (Brown, J.), which denied the ex parte motion for services other than counsel filed by the defendant, Heidi Brouillette. See Sup. Ct. R. 8. The superior court transferred the following question for our review:

Does the right to assistance of counsel, due process of law and equal protection under the law require that an indigent defendant, who is not represented by appointed counsel, be provided with funding for necessary services other than counsel?

The majority declines to answer the constitutional question transferred because it resolves the instant appeal on statutory grounds. The court has reversed the trial court's decision and has interpreted RSA 604-A:6 (Supp. 2013) to require that necessary ancillary defense services be provided at state expense to an indigent criminal defendant who is represented by retained private counsel. In so concluding, I believe that the majority has erred and, for that reason, I respectfully dissent.

The following facts are derived from the interlocutory appeal statement and exhibits thereto. The defendant is charged with burglary, see RSA 635:1 (2007), second degree assault, see RSA 631:2 (Supp. 2013), and misdemeanor criminal mischief, see RSA 634:2 (Supp. 2013). At her arraignment, she applied for appointed counsel. See RSA 604-A:2 (Supp. 2013). After she was

6

determined to be indigent, the trial court appointed the New Hampshire Public Defender to represent her. See id.; RSA 604-A:2-c (2001). The record on appeal does not include the defendant's original financial affidavit. Thereafter, the public defender withdrew, and the defendant retained private counsel at her own expense. The record on appeal also does not include the public defender's withdrawal, the trial court's consent thereto, or the appearance filed by private counsel.

Through her private counsel, the defendant entered a plea of not guilty by reason of insanity and filed an ex parte motion for services other than counsel requesting funds for an expert psychological evaluation. See RSA 604-A:6. To support her claim of indigence, she included a financial affidavit in which she averred that although her monthly income was $1,245, she paid her private counsel $250 per month. The trial court did not make a new determination that the defendant was indigent. Instead, it presumed that she had an "ability to pay" for services because the public defender had withdrawn from the case and a private attorney had been retained. See RSA 604-A:3 (2001). Because the defendant's attorney was retained and not appointed, the court concluded that it had no authority under RSA 604-A:6 to "order the expenditure of funds" for the ancillary defense services she sought. The defendant moved to reconsider, arguing that the order violated her state and federal constitutional rights to assistance of counsel, due process, and equal protection. The trial court denied the defendant's motion to reconsider in a summary order, which stated: "Denied – Simple issue, see prior order." This interlocutory appeal followed.

"Regardless of whether a defendant has invoked equal protection, fundamental fairness necessary for due process, or the right to services to enable [her] counsel to assist [her] effectively, an indigent defendant's access to experts has been said to lie within the sound discretion of the court." State v. Sweeney, 151 N.H. 666, 674 (2005) (quotation omitted). "To warrant a favorable exercise of that discretion, the defendant must demonstrate to the trial court that the assistance [she] seeks is necessary to ensure effective preparation of [her] defense by [her] attorneys." Id. We review the trial court's decision under our unsustainable exercise of discretion standard. Id. at 675.

Here, the trial court did not review whether the defendant was indigent or whether she had made the requisite showing of necessity. Instead, the trial court denied the defendant's motion on statutory grounds, concluding that it lacked authority to grant the motion because she had retained private counsel and was not represented by appointed counsel. See RSA 604-A:6. Therefore, resolving the questions in this interlocutory appeal requires that the court engage in statutory interpretation. For the purposes of this appeal, I assume, without deciding, that the defendant is indigent and that the psychological evaluation she sought was necessary for an adequate defense.

"The interpretation of a statute is a question of law, which we review de novo." State v. Marshall, 162 N.H. 657, 666 (2011). In matters of statutory interpretation, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. Id. at 666-67. When interpreting statutes, we look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. at 667. We will neither consider what the legislature might have said nor add words that it did not see fit to include. Id. Absent an ambiguity, we will not look beyond the language of the statute to discern legislative intent. Id. Our goal is to apply statutes in light of the policy sought to be advanced by the entire statutory scheme. State v. Addison, 165 N.H. 381, 418 (2013). Accordingly, we interpret a statute in the context of the overall statutory scheme and not in isolation. Id.

Both the State and Federal Constitutions entitle an indigent criminal defendant to services, at state expense, that provide "the working tools essential to the establishment of a tenable defense." State v. Robinson, 123 N.H. 665, 669 (1983); see Ake v. Oklahoma, 470 U.S. 68, 76-77 (1985). RSA 604-A:6 is part of the statutory scheme created by the legislature to fulfill that constitutional mandate. See In re Allen R., 127 N.H. 718, 720 (1986).

The New Hampshire Legislature has established a state-wide system of providing legal representation and necessary ancillary defense services to indigent criminal defendants who face imprisonment. See RSA 604-A:2, :6. Such representation "include[s] counsel and investigative, expert and other services and expenses, . . . as may be necessary for an adequate defense." RSA 604-A:1 (Supp. 2013). The system is overseen by the New Hampshire Judicial Council, which supervises the Office of the Public Defender and, with the approval of the Governor and Executive Council, contracts with private attorneys to represent indigent criminal defendants when the public defender program is unavailable. See RSA 604-A:2, :2-b (2001); RSA ch. 604-B (2001). Together with the commissioner of administrative services, the judicial council acts as the "gatekeeper" who ensures that State resources for criminal defense are neither wasted nor abused. See State v. Miller, 651 A.2d 845, 849-50 (Md. 1994) (under Maryland law, public defender is "'gatekeeper' who ensures that [State] resources are not wasted or abused"); cf. In re Allen R., 127 N.H. at 723 (limitations upon public liability for ancillary defense services "express a legislative judgment that the State's obligation to provide [such] . . . services is not a blank check on the public fisc, to be drawn in whatever amount the zeal or caution of counsel may dictate").

Provision of services other than counsel is governed by RSA 604-A:6 and :8 (Supp. 2013). RSA 604-A:6 provides, in pertinent part:

In any criminal case in which counsel has been appointed to represent a defendant who is financially unable to obtain investigative, expert or other services necessary to an adequate defense in his case, counsel may apply therefor to the court, and, upon finding that such services are necessary and that the defendant is financially unable to obtain them, the court shall authorize counsel to obtain the necessary services on behalf of the defendant. . . . In any case in which appointed counsel seeks funds for services other than counsel under this section, the application for such funds may be filed with the court on an ex parte basis and may, upon the request of appointed counsel, be sealed until the conclusion of the representation.

Pursuant to RSA 604-A:8, I, the trial court must forward to the judicial council for payment all approved claims and written statements in support thereof. RSA 604-A:8, II addresses the payment of counsel fees by the judicial council.

According to the plain language of RSA 604-A:6, "investigative, expert or other services" are available to a criminal defendant only under the following circumstances: (1) "counsel has been appointed to represent [the] defendant"; (2) appointed counsel has applied to the court for the services; and (3) the court has found that the "services are necessary and that the defendant is financially unable to obtain them." The clear requirement of RSA 604-A:6 is that an indigent criminal defendant be represented by <u>appointed</u> counsel in order to obtain necessary ancillary defense services at state expense. There is no other statutory mechanism to obtain state funding for such services.

In my view, RSA 604-A:6 is simply "an extension of the procedural framework" provided in RSA chapter 604-A. <u>Miller</u>, 651 A.2d at 849. The system, as enacted by the legislature, entitles an indigent criminal defendant to both counsel and necessary ancillary defense services at state expense, but only as a "package deal." In order to obtain necessary ancillary defense services at state expense, an indigent criminal defendant must be represented by appointed counsel.

Courts in other jurisdictions have determined that "[h]aving to choose an 'all or nothing' approach for representation from [state-funded counsel] does not violate an indigent defendant's [constitutional] rights." <u>Moore v. Wolfe</u>, Civil No. WDQ-11-1014, 2014 WL 354456, at *9 (D. Md. Jan. 22, 2014); <u>see</u> <u>Miller v. Smith</u>, 115 F.3d 1136, 1142-44 (4th Cir. 1997) (state's refusal to pay for trial transcript for indigent criminal defendant's appeal when defendant was represented by pro bono private counsel did not violate Sixth or Fourteenth Amendments because the defendant could have availed himself of assistance through the public defender's office and received a free transcript, but chose not to do so); <u>People v. Cardenas</u>, 62 P.3d 621, 623 (Colo. 2002) ("While an

indigent defendant has the right to legal representation and supporting services at state expense, he does not have the right to pick the attorney of his choice"; thus, "[i]f Defendant wants the state to pay the costs of his attorney and supporting services, his only choice is to be represented by the public defender, or in the case of a conflict, a state-appointed alternate defense counsel."); Moore v. State, 889 A.2d 325, 346 (Md. 2005) ("[T]he Constitution does not bar the State . . . from requiring [indigent criminal defendants] to choose between counsel of their choice and ancillary services provided by the [Office of Public Defender].")

Had the legislature viewed necessary ancillary defense services and legal representation as severable, it could have either enacted a separate statutory provision that allowed retained private counsel to obtain necessary ancillary defense services on behalf of an indigent criminal defendant, or it could have deleted the word "appointed" in RSA 604-A:6, which would have made that provision apply to both retained and appointed counsel. I cannot ignore the legislature's use of the word "appointed" in RSA 604-A:6. See Winnacunnet Coop. Sch. Dist. v. Town of Seabrook, 148 N.H. 519, 525–26 (2002) ("When construing a statute, we must give effect to all words in a statute and presume that the legislature did not enact superfluous or redundant words."). Nor can I infer a statutory provision that the legislature did not see fit to enact.

In the instant case, because the defendant is represented by retained counsel and not by appointed counsel, she is not entitled to necessary ancillary defense services at state expense. Accordingly, I would conclude that the trial court sustainably exercised its discretion when it denied her private counsel's ex parte motion for services other than counsel.

Although I believe that the language of RSA 604-A:6 is plain and unambiguous, my colleagues disagree with my statutory interpretation. To the extent that my dissent has accurately reflected the legislature's intent, the legislature may wish to consider amending the statute to state expressly that an indigent criminal defendant must be represented by appointed counsel in order to obtain necessary ancillary defense services at state expense.

Although I would uphold the trial court's statutory interpretation, I, like the majority, decline to answer the transferred constitutional question. The constitutional question was raised in an ex parte motion, and, therefore, was never fully litigated in the trial court before it was transferred to this court. Nor did the trial court analyze the constitutional question in its order summarily denying the defendant's ex parte motion. Under these circumstances, I would remand the constitutional question for the trial court to resolve in the first instance.

HICKS, J., joins in the dissent.

10