**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Beatriz CORPORAN–CUEVAS,**
**Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Victor MILANES–CASTELLANO,**
**Defendant–Appellant.**

Nos. 93–5385, 93–5485.

United States Court of Appeals,
Fourth Circuit.

Argued April 11, 1994.

Decided Sept. 20, 1994.

**ARGUED:** Richard Christopher Bittner, Baltimore, MD, Robert Thomas Durkin, Jr., Baltimore, MD, for appellants. John Francis Purcell, Jr., Asst. U.S. Atty., Baltimore, MD, for appellee. **ON BRIEF:** Lynne A. Battaglia, U.S. Atty., Baltimore, MD, for appellee.

Before ERVIN, Chief Judge, NIEMEYER, Circuit Judge, and RESTANI, Judge, United States Court of International Trade, sitting by designation.

Affirmed in part and dismissed in part by published opinion. Chief Judge ERVIN wrote the opinion, in which Judge NIEMEYER and Judge RESTANI joined.

## OPINION

ERVIN, Chief Judge:

Beatriz Corporan–Cuevas and Victor Milanes–Castellano were among five individuals indicted on six counts relating to cocaine importation and distribution. Cuevas and

Milanes were tried jointly by a jury in the District Court for the District of Maryland beginning on February 1, 1993.

Cuevas requested a separate trial and renewed her motion when part of her statement inculpating Milanes was ruled inadmissible in light of *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Her motion was denied. She was convicted of conspiracy to distribute and to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846, and of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a). On May 3, 1993, she was sentenced to 120 months incarceration and five years supervised release. She was ordered to voluntarily surrender on July 1, 1993. Cuevas appealed her conviction on May 4, 1993, and has failed to surrender as ordered. A warrant for her arrest was issued on July 2, 1993, and she remains a fugitive.

On the first day of trial, Milanes moved to replace his counsel and requested a continuance for new counsel to become further acquainted with his case. His motion was denied, but his preferred counsel was permitted to attend trial and assist the attorney of record. Milanes was convicted of conspiracy to import cocaine in violation of 21 U.S.C. § 963, and two counts of importation of cocaine in violation of 21 U.S.C. § 952, in addition to being convicted of the same offenses as Cuevas. On June 9, 1993, Milanes was sentenced to concurrent terms of 151 months imprisonment, followed by five years supervised release. He entered his notice of appeal on June 14, 1993. He is currently serving his sentence.

Cuevas appeals the denial of her motion for severance and Milanes appeals the denial of his motion for substitution of counsel. For the reasons that follow, we affirm the conviction of Milanes and dismiss Cuevas' appeal.

## I.

In October 1992, U.S. Customs agents and postal inspectors discovered that two packages mailed from Panama to an address in Oxon Hill, Maryland contained a total of 18 kilograms of cocaine. After a controlled delivery of the packages, police arrested Jerry Leight Bruce Allen. Allen cooperated with the police and informed them that the packages had been sent to him from Jaime Sierra in Panama. Allen was to deliver the drugs to Milanes. Customs agents thereafter consensually recorded several phone calls between Allen and Sierra, Milanes and Cuevas. Milanes told Allen in a recorded conversation that he would send a woman to pick up the cocaine on October 29, 1992.

On October 29, Milanes left messages for Allen telling him the telephone number of the motel where Milanes was staying. Surveillance agents were posted at the motel. Milanes told Allen that his messenger was ready to pick up the "clothes" and gave Allen Cuevas' beeper number. Allen contacted Cuevas and they agreed to meet in the parking lot of Bob's Big Boy Restaurant in Hyattsville, Maryland. Cuevas and Milanes were observed at the motel together, and Cuevas was followed by undercover agents from the motel to the meeting with Allen. Cuevas asked Allen "how many there were" and Allen responded there were "nineteen." Cuevas then remarked that the person with Allen, an undercover agent, "looked like a fed." Cuevas paid Allen $300 in cash and took the package, at which time she was placed under arrest. Shortly thereafter, agents at the motel arrested Milanes. After being advised of her *Miranda** rights in Spanish, Cuevas was transported to Baltimore for booking. During transport, Cuevas initiated a conversation with Agent Noppinger in which she said that she knew the packages contained cocaine and that she had picked them up for Milanes. She later denied knowing that the packages contained cocaine.

At the detention hearing on November 13, 1992, both attorneys Robert Durkin and Ramon Pagon were present on behalf of Milanes. The judge told Milanes that he could choose either, both, or neither attorney to represent him. After a recess during which Milanes consulted with the lawyers and with his family, Milanes chose Durkin to represent him. The judge informed Milanes that

---

* *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

he could change his mind regarding his selection of counsel but that he must do so promptly. Almost three months later on February 1, 1993, the first day of trial, Durkin requested that he be allowed to withdraw and that a continuance be granted to allow Pagon to proceed as substitute counsel. Upon inquiry by the court, Milanes said that he did not want to replace Durkin, but wanted to add Pagon as additional counsel. J.A. 27. After conferring with Pagon, Milanes stated that he wanted Pagon as his attorney and needed a continuance in order for Pagon to prepare. The court denied that request but allowed Pagon to assist Durkin at trial.

At trial, Cuevas sought to cross-examine Noppinger concerning that part of Cuevas' admission in which Cuevas said she picked up the packages for Milanes. The court, to avoid a *Bruton* violation, refused to allow the admission inculpating a co-defendant when the declarant did not take the stand. Cuevas then renewed her motion for severance, claiming that she was denied her Sixth Amendment right to confrontation. That motion was denied.

## II.

■ The Sixth Amendment to the United States Constitution guarantees every defendant the right to a reasonable opportunity to secure counsel of her own choosing. *United States v. Gallop,* 838 F.2d 105, 107 (4th Cir.), *cert. denied,* 487 U.S. 1211, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988). That right, however, is not absolute. *Id.* Whether a motion for substitution of counsel should be granted is within the trial court's discretion. *Id.* Whether the district court erred in denying Milanes' motion for substitution of counsel is reviewed for abuse of discretion. *Id.* at 108.

■ The court must weigh the defendant's right to choose counsel against the countervailing state interest in proceeding with prosecutions on an orderly and expeditious basis. *Sampley v. Attorney Gen. of North Carolina,* 786 F.2d 610, 613 (4th Cir.), *cert. denied,* 478 U.S. 1008, 106 S.Ct. 3305, 92 L.Ed.2d 719 (1986). In determining whether the district court abused its discretion in making this decision, this court considers the

"timeliness of the motion; adequacy of the court's inquiry into the defendant's complaint; and whether the attorney/client conflict was so great that it had resulted in total lack of communication preventing an adequate defense." *Gallop,* 838 F.2d at 108.

■ Here, Milanes' motion was made on the first day of trial and would clearly be untimely under all but the most exigent circumstances. He had chosen Durkin over Pagon almost three months before the trial. Milanes indicated no reason why he had waited until the first day of trial to move for substitution.

The court's inquiry into Milanes' complaint was sufficient, although less than exhaustive. When Durkin asked to be permitted to withdraw, the court asked Milanes through an interpreter:

Court: Now I understand that you would like to withdraw, you want to be represented by an attorney from New York and not Mr. Durkin, is that correct?

Milanes: That he withdraw? That he withdraw?

Court: Let me repeat the question and you listen carefully: The court has been given to understand that you now, the jury is now ready to proceed to be drawn, and you want to withdraw the appearance of Mr. Durkin and have another attorney represent you, is that correct?

Milanes: No. The attorney from New York I want him to be there also.

Court: In other words, you want to be represented by Mr. Durkin and have an attorney come down from New York?

Milanes: Yes, that is correct.

Court: In other words, you don't want to have Mr. Durkin, you want to have Mr. Durkin continue to represent you?

Milanes: Yes, and the one from New York also.

J.A. 27. Pagon then requested a recess to discuss the matter with Milanes. Following some communication occurring off the record, the court later stated that

I have just been given to understand that the defendant would like to have Mr. Pa-

gon represent him, and he would like a continuance.... And the request is denied. Mr. Durkin will represent the defendant. Mr. Pagon, who may assist, you may assist, Mr. Durkin. And we will now call the jury in. The court is not used to having a defendant or anybody else on the morning of trial take two or three separate positions.

J.A. 29–30.

■ The court inquired into whether Milanes wanted to replace Durkin and was told by Milanes that he wanted to retain Durkin as his counsel. After a further conference with Pagon, Milanes ambiguously indicated to the court that he wanted Pagon to represent him and needed a continuance for this purpose. Given these circumstances, the court could have concluded that the motion for substitution was a dilatory tactic. Better form would have the judge inquire again whether Milanes wanted a substitution or an addition, and why the change was necessary, but "the need for inquiry will not be recognized, however, where the defendant has not evidenced his dissatisfaction or wish to remove his appointed counsel." *United States v. Iles,* 906 F.2d 1122, 1131 (6th Cir.1990). The record does not clearly indicate that Milanes wanted Durkin removed; it is only clear as to the fact that Milanes wanted Pagon to represent him as well.

Finally, there is no evidence that the conflict between Durkin and Milanes was so great that it had resulted in a total lack of communication preventing an adequate defense. At the beginning of the trial, Milanes was quite happy to have Durkin continue to represent him, assisted by Pagon. No evidence of any conflict was presented. Furthermore, no suggestion was made that there was a total lack of communication between Durkin and Milanes. Although the record indicates that Milanes speaks only Spanish and that Pagon is bilingual in Spanish and English, there is no indication that Durkin cannot speak Spanish. Even if Durkin cannot speak Spanish, the record indicates that interpreters were used without objection throughout the trial. Additionally, the court permitted Pagon to assist Durkin with Milanes' defense.

Weighing these factors against the court's interest in the orderly administration of justice, the district court did not abuse its discretion in denying Milanes' motion for substitution of counsel and a continuance. Its decision is affirmed.

## III.

■ Cuevas claims that the district court erred in denying her motion for severance. She, however, remains a fugitive from justice. Cuevas was ordered to surrender herself to begin her prison term on July 1, 1993 and failed to do so. As such, she has no right to avail herself of the resources of the court to appeal her conviction. *Molinaro v. New Jersey,* 396 U.S. 365, 366, 90 S.Ct. 498, 498–99, 24 L.Ed.2d 586 (1970). "Disposition by dismissal of pending appeals of escaped prisoners is a longstanding and established principle of American law." *Estelle v. Dorrough,* 420 U.S. 534, 537, 95 S.Ct. 1173, 1175, 43 L.Ed.2d 377 (1975). "No persuasive reason exists why this court should proceed to adjudicate the merits of a criminal case after the convicted defendant who has sought review escapes from the restraints placed upon him pursuant to the conviction." *Molinaro,* 396 U.S. at 366, 90 S.Ct. at 498. The court, therefore, "has the authority to dismiss the appeal on this ground." *Id.* See *In re Harvey,* 697 F.2d 112 (4th Cir.1982).

For the foregoing reasons, it is ORDERED:

The above-entitled appeal of Beatriz Corporan–Cuevas be and it is hereby dismissed with leave to said appellant, for good cause shown, to move to reinstate such appeal if she surrenders herself to federal custody before the expiration of thirty days from the date of this order.

## IV.

For the reasons set forth above, we affirm the conviction of Victor Milanes–Castellano and dismiss the appeal of Beatriz Corporan–Cuevas, as ordered.

*AFFIRMED IN PART AND DISMISSED IN PART.*