Rehearing en banc granted by order filed 12/10/96; published opinion of 10/29/96 is vacated.

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BERNARD ERIC MILLER,
Petitioner-Appellant,

v.

WILLIAM SMITH; ATTORNEY GENERAL
OF THE STATE OF MARYLAND,
Respondents-Appellees.

No. 95-7521

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, District Judge.
(CA-95-891-WN)

Argued: April 1, 1996

Decided: October 29, 1996

Before MURNAGHAN and HAMILTON, Circuit Judges, and
LAY, Senior Circuit Judge of the United States Court of Appeals
for the Eighth Circuit, sitting by designation.

_____

Reversed and remanded with instructions by published opinion. Judge
Murnaghan wrote the majority opinion, in which Senior Judge Lay
joined. Judge Hamilton wrote a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Laurack Doyle Bray, Washington, D.C., for Appellant.
Evelyn Omega Cannon, Assistant Attorney General, Baltimore,
Maryland, for Appellees. **ON BRIEF:** J. Joseph Curran, Jr., Attorney

General of Maryland, Kathleen S. Hoke, Assistant Attorney General, Baltimore, Maryland, for Appellees.

_____

**OPINION**

MURNAGHAN, Circuit Judge:

Bernard Eric Miller appeals from the district court's denial of his petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. In the petition, Miller challenged the State of Maryland's procedure for providing transcripts to indigents for appeal purposes and alleged that he was denied a free trial transcript in violation of his federal constitutional rights. Because the application of Maryland Rules deprives Miller of the protections guaranteed by the U.S. Constitution, we reverse the district court's judgment and remand for action consistent with this opinion.

I

Following his conviction for felony murder in Maryland state court, Miller attempted to obtain a transcript of his trial in order to perfect a direct appeal.[1] As an indigent, Miller sought the transcript at state expense. Because he received legal representation from an attorney working on a pro bono publico basis instead of a Maryland public defender, however, a state judge denied the request.[2] Acknowledging Miller's right as an indigent to transcripts necessary for appeal purposes, the court nevertheless ruled that Maryland Rules 1-325(b) and 8-505 required an indigent to be represented by the state public defender's office in order to receive those transcripts at state expense.[3]

_____

[1] Miller received a sentence of life in prison plus twenty years.

[2] The state court both refused to order the public defender's office to provide the transcript and declined to pay for a copy itself.

[3] Maryland Rule 1-325(b) (1996) reads:

> The court shall order the State to pay the court costs related to an appeal or an application for leave to appeal and the costs of preparing any transcript of testimony, brief, appendices, and

2

The court then found that Miller failed to satisfy that criterion because he refused to accept public defender representation and because his attorney refused to seek designation as an assigned public defender so that he could represent Miller under the supervision of the public defender's office.

Miller appealed to the Maryland Court of Special Appeals, arguing that the transcript denial violated the Fourteenth Amendment's equal protection and due process guarantees, as well as his Sixth Amendment right to counsel. The appellate court reversed the trial court, but on purely statutory grounds. See Miller v. Maryland, 635 A.2d 1, 6 (Md. Ct. Spec. App. 1993). The court interpreted Maryland Rule 1-325(b) to permit an indigent defendant represented by pro bono counsel to receive at state expense the transcripts necessary for appeal and ordered the state public defender's office to accommodate Miller.

The Maryland Court of Appeals granted certiorari and reversed, holding that the Maryland Rules neither required the provision of a free transcript to Miller nor violated his constitutional rights. See Maryland v. Miller, 651 A.2d 845, 846, 851-52 (Md. 1994). The court read Rule 1-325(b) as requiring an indigent to "apply to the Public Defender and be represented by, or refused representation by, that office before he can receive a free transcript." Id. at 849. The court explained that the rule uses the public defender as a "gatekeeper" to protect against the waste or abuse of state resources set aside for indigent defendants.

_____

> record extract necessary in connection with the appeal, in any case in which (1) the Public Defender's Office is authorized by these rules or other law to represent a party, (2) the Public Defender has declined representation of the party, and (3) the party is unable by reason of poverty to pay those costs.

Rule 8-505 states:

> When the lower court has ordered that costs be paid by the State of Maryland pursuant to Rule 1-325(b) or in any case in which a party to the appeal is represented by the Public Defender, that party's brief, reply brief, and other documents required to be filed by that party in the appellate court shall be reproduced under the supervision of the Public Defender.

3

Acknowledging that the rule treats indigents and non-indigents differently, the court of appeals determined that Miller's federal constitutional rights had not been violated because he had not been "completely denied the appellate process." Id. at 851. The court found that the requirement of application to the public defender's office is a "reasonable restriction" on an indigent appellant's constitutional right to a free transcript. Id. at 852. Furthermore, the court concluded that the procedure does not discriminate on the basis of wealth:

> [T]he kind of appeal Miller will get does not depend on the amount of money he has; it depends on his willingness to cooperate and follow the reasonable procedures set forth in [Md. Ann. Code] Art. 27A and the Maryland Rules. But for his intransigence, this system would work, and Miller would receive a free transcript.

Id.

Finally, the state court of appeals rejected Miller's Sixth Amendment challenge. The court reasoned that a criminal appellant has no absolute or automatic right to choice of counsel, so requiring Miller to "avail himself of the [public defender's services] in order to obtain a free transcript" is permissible. Id. at 853.

Miller sought reconsideration of the ruling, arguing that a conflict of interest on the part of the public defender's office prevented him from accepting its services on appeal. He maintained that in the course of representing his co-defendant in the underlying murder case, the office had accused Miller of being the driver of the car and thus, the murderer. Forcing him to accept public defender services on appeal, Miller argued, would therefore violate his constitutional protection against conflict-free legal representation. The court of appeals denied the motion.

Miller next filed his federal habeas corpus petition. Following the recommendation of a federal magistrate who had adopted the findings and conclusions of the Maryland Court of Appeals, the district court denied the petition. Meanwhile, the Maryland Court of Special Appeals dismissed Miller's direct appeal because he failed to provide

4

the relevant trial transcript. Miller asked the district court to stay or enjoin the state court's dismissal of his appeal, but the court refused.

II

Miller presents three claims on appeal: (1) that the district court should have held an evidentiary hearing and rendered its own findings of fact and conclusions of law; (2) that the State's denial of a free transcript violated his constitutional rights; and (3) that the district court should have stayed the state court order dismissing his appeal. After careful consideration, we find that the first and third challenges are without merit. See Townsend v. Sain, 372 U.S. 293, 313, 318 (1963) (district court does not abuse its discretion by refusing to hold an evidentiary hearing where there are no relevant facts in dispute); Pruett v. Thompson, 996 F.2d 1560, 1577 (4th Cir.), cert. denied, 510 U.S. 984 (1993); see also Levine v. Torvik, 986 F.2d 1506, 1518-19 (6th Cir.) (in considering a habeas petitioner's request for a stay, the court generally looks at the substantiality of the claims, the likelihood of success and the existence of extraordinary circumstances), cert. denied, 509 U.S. 907 (1993). We do, however, agree that the denial of a free transcript to Miller is unconstitutional as impermissibly infringing upon his rights under the Sixth and Fourteenth Amendments, and turn now to that claim.

III

A

The U.S. Constitution does not obligate states to provide an opportunity to appeal in criminal cases. McKane v. Durston, 153 U.S. 684, 687 (1894). If a state chooses to create such a right to review, however, it must employ procedures that satisfy due process and equal protection. Evitts v. Lucey, 469 U.S. 387, 393 (1985); Nelson v. Peyton, 415 F.2d 1154, 1157 (4th Cir. 1969), cert. denied, 397 U.S. 1007 (1970). In the criminal context, due process is violated by state procedures that "offend[ ] some principle so rooted in the traditions and conscience of our people as to be ranked as fundamental." Billotti v. Legursky, 975 F.2d 113, 115 (4th Cir. 1992) (quoting Medina v. California, 505 U.S. 437, 445 (1992)), cert. denied, 507 U.S. 984 (1993). Equal protection requires that, once created, a state's appellate

5

procedures "must be kept free of unreasoned distinctions." <u>Rinaldi v. Yeager</u>, 384 U.S. 305, 310 (1966). "[I]n defining a class subject to legislation, the distinctions that are drawn [must] have some relation to the purpose for which the classification is made." <u>Id.</u> at 309.

"The Assistance of Counsel for his [the defendant's] defense" guaranteed by the Sixth Amendment to the Constitution may be provided insofar as selection of a public defender to represent an indigent is concerned. It does not, however, force such representation by a defendant who prefers to decline public defender representation and to select a qualified attorney who agrees to represent him <u>pro bono publico</u>. Where that occurs, as it has here, for the State of Maryland to refuse a transcript (which would be supplied to a public defender) amounts clearly and simply to partial yet substantial denial of the <u>assistance</u> which is guaranteed by the Sixth Amendment. It signifies a denial of fairness and equality.

Drawing on these notions of fairness and equality, the Supreme Court has held that the Fourteenth Amendment guarantees "meaningful access to justice" in criminal cases.**4** <u>Ake v. Oklahoma</u>, 470 U.S. 68, 77 (1985). All criminal defendants are entitled to "an adequate opportunity to present their claims fairly within the adversary system." <u>Ross v. Moffitt</u>, 417 U.S. 600, 612 (1974). "[J]ustice," the Court has explained, "cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully

_____

**4** The Court's reasoning rests on both the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment. <u>See Evitts</u>, 469 U.S. at 403-05 (discussing converging principles of equal protection and due process in meaningful access cases); <u>Bearden v. Georgia</u>, 461 U.S. 660, 665 (1983) (same). Sometimes the Court has leaned more heavily on one clause or the other, while at other times it has blurred the distinction between the two.

As the Court has explained, each clause embodies "a different inquiry which emphasizes different factors." <u>Ross v. Moffitt</u>, 417 U.S. 600, 609 (1974). Due process "emphasizes fairness between the State and the individual dealing with the State, regardless of how other individuals in the same situation may be treated[,]" while equal protection "emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable." <u>Id.</u>

6

in a judicial proceeding in which his liberty is at stake." <u>Ake</u>, 470 U.S. at 76.

No one disputes the applicability of these long-standing principles to Miller's case, as Maryland has created a statutory right of direct appeal for convicted criminals. <u>See</u> Md. Code Ann. [Cts. & Jud. Proc.] § 12-301 (1995). The disagreement here concerns Maryland's method for providing transcripts to indigent appellants and the impact of that method on Miller. The State contends that its procedures ensure meaningful access consistent with the requirements of the Fourteenth Amendment. Miller, of course, insists that they fall short.

B

Miller asserts that two constitutional rights are implicated in the case at bar: his entitlement to a free transcript for appeal and his right to counsel of choice.

1

Meaningful access entitles a criminal appellant pursuing a first appeal as of right to "certain minimum safeguards necessary to make that appeal `adequate and effective.'" <u>Evitts</u>, 469 U.S. at 392 (citation omitted). Thus, the Court has "focused on identifying the `basic tools of an adequate defense or appeal,' . . . and . . . required that such tools be provided to those defendants who cannot afford to pay for them." <u>Ake</u>, 470 U.S. at 77 (internal citation omitted). While a state has no obligation to "purchase for the indigent defendant all the assistance that his wealthier counterpart might buy," it must provide substantially the same access to both. <u>Id.</u>

Among those tools generally considered essential to ensure adequate and effective appellate review is a transcript of prior proceedings. An indigent is entitled, therefore, to a free transcript when necessary to a decision on the merits of his criminal appeal. <u>Griffin v. Illinois</u>, 351 U.S. 12, 19-20 (1956) (plurality). In Maryland, appellate courts require the relevant trial records to accompany an appeal and have the discretion to dismiss an appeal lacking the necessary documents. <u>See</u> Md. Rules 8-411, 8-413(a), 8-602(a). Consequently,

7

because a trial transcript is a necessary tool available to other appellants for a price, the State must provide a free copy to an indigent appellant unable to buy one.**5** <u>Britt v. North Carolina</u>, 404 U.S. 226, 227 (1971); <u>Griffin</u>, 351 U.S. at 19-20; <u>accord United States v. Talbert</u>, 706 F.2d 464, 469-70 (4th Cir. 1983); <u>United States v. Gaither</u>, 527 F.2d 456, 458 (4th Cir. 1975), <u>cert. denied</u>, 425 U.S. 952 (1976).

2

A criminal defendant also has a constitutional right to counsel of choice.**6** <u>Wheat v. United States</u>, 486 U.S. 153, 159 (1988); <u>United States v. Corporan-Cuevas</u>, 35 F.3d 953, 956 (4th Cir. 1994). Grounded primarily in the Sixth Amendment right to effective assistance of counsel, the right protects the general freedom "to select and be represented by one's preferred attorney."**7** <u>Wheat</u>, 486 U.S. at 159.

_____

**5** The government may refuse to provide a transcript to an indigent appellant only when an adequate alternative is available, <u>Britt v. North Carolina</u>, 404 U.S. 226, 227 (1971); <u>Riggins v. Rees</u>, 74 F.3d 732, 735 (6th Cir. 1996); <u>United States v. Talbert</u>, 706 F.2d 464, 469 (4th Cir. 1983), or if the defendant has waived a prior opportunity to obtain a transcript and makes a frivolous request, <u>United States v. MacCollom</u>, 426 U.S. 317, 326-27 (1976) (federal defendant seeking transcript to pursue collateral relief). Neither situation is present in the case at bar.

**6** The State advances the proposition that an indigent has no right to counsel of his own choosing. In fact, every circuit court and the U.S. Supreme Court has recognized that a criminal defendant has a qualified right to counsel of choice. <u>See, e.g.</u>, <u>United States v. Inman</u>, 483 F.2d 738, 739-40 (4th Cir. 1973) ("The Sixth Amendment right to counsel includes . . . the right of any accused, if he can provide counsel for himself by his own resources or through the aid of his family or friends, to be represented by an attorney of his own choosing."), <u>cert. denied</u>, 416 U.S. 988 (1974). The State further argues that there is no constitutional right to self representation on appeal, and thus no right to counsel of choice. We find that argument weak as well, for as the Third Circuit has observed, the Supreme Court notes in <u>Wheat</u> that the right to counsel of choice is not a species of the right to self representation. <u>See Fuller v. Diesslin</u>, 868 F.2d 604, 608 (3rd Cir.) (citing <u>Wheat</u>, 486 U.S. at 159 n.3), <u>cert. denied</u>, 493 U.S. 873 (1989).

**7** The Supreme Court has recognized that the right also has a basis in the Fourteenth Amendment's promise of due process of law. <u>See Powell</u>

While that right is not absolute, the Supreme Court has explained that there is always a "presumption in favor of [a defendant's] counsel of choice." Id. at 164.

The State contends that the right to counsel of choice neither continues on appeal nor applies to indigents. We disagree. Because the assistance of an attorney is one of the "raw materials integral to the building of an effective defense," Ake, 470 U.S. at 77, the Supreme Court has repeatedly affirmed that the Fourteenth Amendment's promise of meaningful access entitles an indigent to the effective assistance of counsel on appeal. McCoy v. Court of Appeals of Wisconsin, 486 U.S. 429, 436 (1988); Evitts, 469 U.S. at 396-97; accord Nelson, 415 F.2d at 1157. We have recognized that the right to counsel of choice "is premised on respect for the individual," and characterized it as "an essential element" of the right to counsel. United States v. Mullen, 32 F.3d 891, 895 (4th Cir. 1994) (citation omitted); see also United States v. Gallop, 838 F.2d 105, 107 (4th Cir.), cert. denied, 487 U.S. 1211 (1988). Because we discern no reason for withholding that important component of the fundamental right to counsel on appeal, we decline to do so here.**8** See Nelson, 415 F.2d at 1157 (once the state creates an appellate system, it must provide an unqualified right to counsel).

In addition, we realize that "a defendant may not insist on representation by an attorney he cannot afford or who for other reasons declines to represent the defendant." Wheat, 486 U.S. at 159. Thus, the right to counsel of choice does not extend to an indigent receiving public representation, see Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624 (1989); United States v. Childress, 58 F.3d 693, 736 (D.C. Cir. 1995), cert. denied, 116 S. Ct. 825 (1996), but does apply to an indigent able to secure pro bono counsel, see Caplin,

_____

v. Alabama, 287 U.S. 45, 53 (1932). Circuit courts of appeal generally treat the right as derived from the Sixth Amendment. See, e.g., Corporan-Cuevas, 35 F.3d at 956; United States v. Friedman, 849 F.2d 1488, 1490 (D.C. Cir. 1988), cert. denied, 498 U.S. 1110 (1991).

**8** Neither the Supreme Court nor any of our sister circuits appear to have held otherwise. See, e.g., Friedman, 849 F.2d at 1490 n.5 (assuming, without deciding, that the right to counsel of choice applies to the first appeal as of right).

9

491 U.S. at 624-25 ("Nor does the Government deny that the Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds.").

C

The State has conceded that Miller needed a transcript in order to receive adequate appellate review and that, as an indigent, he qualified for state-funded services. The State has further acknowledged that Miller was denied a free transcript solely because he received legal representation outside the auspices of the public defender's office. Miller argues, therefore, that by interpreting Rule 1-325(b) to require that he apply for public defender services in order to receive a free transcript, the State sought to deny him counsel of choice, treated him differently solely because of his indigency, and ultimately deprived him of "adequate and effective appellate review." He maintains that the State created a Hobson's choice whereby an indigent criminal appellant who seeks to assert his constitutional right to a state-provided transcript must forfeit his right to the attorney of his choice for no compelling reason.

1

We agree with Miller's assessment. Although procedural as the State maintains, the requirement of application for public representation did interfere with Miller's right to retain his counsel of choice and his ability to receive the transcript he needed to appeal. Indeed, the State's interpretation of Rule 1-325(b) as mandating application to the public defender's office forced Miller to choose between his secured counsel and the necessary trial record. Although he had an attorney at no cost to the State, Miller was told he must give up that attorney in order to receive a free transcript. When he insisted on retaining his pro bono counsel, he was denied the transcript. The state court then dismissed his appeal due to the missing transcript. It is thus abundantly clear that, in Maryland, an indigent seeking a transcript for appeal has only one route available, and that route -- seeking public defender representation -- requires forfeiting another constitutional right.

10

Forcing a criminal defendant to surrender one constitutional right "in order to assert another" is "intolerable." Simmons v. United States, 390 U.S. 377, 394 (1968) (describing situation whereby defendant was obliged either to forfeit what he believed to be a valid Fourth Amendment claim or to waive his Fifth Amendment privilege against self incrimination); see also Lefkowitz v. Cunningham, 431 U.S. 801, 807-08 (1977) (finding state statute impermissibly coercive, in part because it forces forfeiture of one constitutional right as the price for exercising another); United States v. Ryan, 810 F.2d 650, 656 (7th Cir. 1987) (recognizing that government is precluded from "coercing the waiver of a constitutional right either by conditioning the exercise of one constitutional right on the waiver of another, . . . or by attacking conditions that penalize the exercise of a constitutional right").**9**

_____

**9** Later cases have distinguished Simmons on factual or other grounds without dispelling its notion that a criminal defendant must not be forced to surrender one constitutional right in order to exercise another. See, e.g., United States v. Kahan, 415 U.S. 239, 242-43 (1974) (distinguishing Simmons because respondent did not have valid Sixth Amendment right to appointment of counsel and "was not, therefore, faced with the type of intolerable choice Simmons sought to relieve"). In addition, other circuit courts have noted Simmons in their acknowledgment of a "doctrine of unconstitutional conditions" in the criminal context. Ryan, 810 F.2d at 656; see also United States v. Dent, 984 F.2d 1453, 1460 (7th Cir.), cert. denied, 510 U.S. 858 (1993).

The Supreme Court has noted that the Constitution does not forbid "every government-imposed choice in the criminal process that has the effect of discouraging the exercise of constitutional rights." Chaffin v. Stynchcombe, 412 U.S. 17, 30 (1973) (discussing cases upholding plea bargaining despite its encouragement of the waiver of some constitutional rights). However, making the exercise of a constitutional right contain some element of risk, such as a longer sentence, is quite different from foreclosing the exercise of one right merely by the assertion of another. See Bordenkircher v. Hayes, 434 U.S. 357, 363-64 (1978) (finding no punishment or retaliation inherent in plea bargaining so long as the defendant is free to accept or reject the prosecution's offer); see also Tomai-Minogue v. State Farm Mut. Auto, Ins. Co., 770 F.2d 1228, 1232 n.6 (4th Cir. 1985) (explaining that forcing a choice between the exercise of constitutional rights is different from a situation involving waiver where "one voluntarily surrenders a constitutional right, not to assert another constitutional right, but to secure an obvious collateral benefit").

11

We previously have found it impermissible to compel a civil litigant to forego some constitutional rights in order to assert others. See Tomai-Minogue v. State Farm Mut. Auto. Ins. Co., 770 F.2d 1228, 1232 (4th Cir. 1985). We believe it even more egregious to subject a criminal defendant to such a choice.[10] We agree with the Third Circuit that

> [a] defendant in a criminal proceeding is entitled to certain rights and protections which derive from a variety of sources. He is entitled to all of them; he cannot be forced to barter one for another. When the exercise of one right is made contingent upon the forbearance of another, both rights are corrupted.

United States ex rel. Wilcox v. Johnson, 555 F.2d 115, 120 (3rd Cir. 1977) (finding that conditioning the exercise of the right to testify upon waiver of the right to counsel is an impermissible infringement upon both rights).

Forcing an indigent to choose between two rights guaranteed by the Constitution results in the denial of one right or the other. Imposition of that dilemma upon Miller thus affronts our notions of basic fairness. But even if it did not, the State must provide a legitimate reason for burdening Miller's ability to exercise his constitutional rights. See generally Daniels v. Williams, 474 U.S. 327, 331 (1986) (due process protects individuals from arbitrary state action); Nebbia v. New York, 291 U.S. 502, 536-37 (1934) (due process requires that state action bear a reasonable relation to a proper legislative purpose and is not arbitrary or impermissibly discriminatory). Conditions imposed on an indigent's ability to obtain a free transcript cannot be arbitrary and unreasonable, but must "comport with fair procedure." United States v. MacCollom, 426 U.S. 317, 324 (1976) (quoting Douglas v. California, 372 U.S. 353, 357, 365 (1963)); see also Lane v. Brown,

_____

[10] The circumstances here appear especially pernicious because Miller has offered a particularly compelling reason for refusing public defender representation. The fact that the State has procedures in place for assigning to panel attorneys cases in which the public defender's office has a conflict of interest does not justify forcing that option upon an indigent who has available the free services of another attorney.

12

372 U.S. 477, 485 (1963) (voiding state law that arbitrarily granted transcripts to indigents only at the public defender's request). Similarly, the right to counsel of choice "must be protected if possible." United States v. Agosto, 675 F.2d 965, 970 n.4 (8th Cir.), cert. denied, 459 U.S. 834 (1982); see also Wheat, 586 U.S. at 164. The State may deny the right only "to serve some compelling purpose," United States v. D'Amore, 56 F.3d 1202, 1204 (9th Cir. 1995) (internal quotation marks omitted), and at the very least, must provide a "strong governmental reason" for burdening an individual's ability to exercise the right,[11] Caplin, 491 U.S. at 631; see also United States v. Monsanto, 491 U.S. 600, 616 (1989) (testing pretrial restraining order for arbitrary interference with defendant's opportunity to retain counsel).

Moreover, equal protection principles require the State to assert a compelling reason to justify disparate treatment of indigents and non-indigents when, as here, that difference interferes only with the constitutional rights of indigents. See San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 29 (1973) (when a statute differentiating on the basis of wealth interferes in the exercise of a fundamental right, strict scrutiny applies); Rinaldi, 384 U.S. at 309; see generally Cleburne v. Cleburne Living Center Inc., 473 U.S. 432, 440 (1985) (strict scrutiny requires that a law be "suitably tailored to serve a compelling state interest" in order to survive)."Unfairness results only if

_____

[11] For the most part, counsel-of-choice issues have arisen at the trial level and involved motions for continuance to accommodate counsel or disqualification of counsel. See United States v. Voigt, 89 F.3d 1050, 1074 (3rd Cir. 1996) (discussing and categorizing counsel-of-choice cases). Accepted practice calls for judicial balancing of the asserted governmental interests against the defendant's right to proceed with his chosen counsel. See Corporan-Cuevas, 35 F.3d at 956. Valid justifications for trumping the right have focused on the integrity of the judicial process and concerned such matters as the orderly administration of justice, see, e.g., Mullen, 32 F.3d at 895; potential attorney-client conflicts of interest, see, e.g., Wheat, 486 U.S. at 164, and attorneys' ethical problems, see, e.g., D'Amore, 56 F.3d at 1204. Defendants have also challenged the impact of court rules or statutes on their right to counsel of choice. See, e.g., Caplin, 491 U.S. at 624 (claim that forfeiture laws infringed upon right); United States v. Weisman, 858 F.2d 389, 390 (8th Cir. 1988) (same), cert. denied, 489 U.S. 1071 (1989).

13

indigents are singled out by the State and denied meaningful access to the appellate system because of their poverty." Ross, 471 U.S. at 611.

2

We conclude that the State's reasons do not provide sufficient justification for violating Miller's constitutional rights. On the whole, we find the State's logic less than compelling and somewhat arbitrary. The Maryland Court of Appeals found the requirement that all indigent appellants must seek services through the public defender's office justified by the State's objective of protecting the resources that it has set aside for indigent defendants. To that end, the State has also asserted a desire to encourage competent legal representation for poor defendants and an administrative goal of easing recovery of costs from those indigent defendants who later acquire funds. While all of these reasons are certainly admirable, they simply do not warrant unnecessary infringement upon an indigent's ability to exercise his constitutional rights.

In circumstances such as those at bar, where an indigent appellant has successfully retained counsel at no cost to himself or the State, the conservation rationale disappears. When there is no need for appointed counsel, the explanation that forcing all indigents to seek public representation will protect state resources is nonsensical. If properly applied, the rule will force all indigents seeking to pursue a direct appeal to become clients of the state public defender's office -- even those capable of securing pro bono legal representation and imposing no financial burden on the State. Due simply to the increase in clients to be served, the State will end up needing more resources to carry out its duties. Casting a wider net by insisting that all indigent appellants proceed through the public defender system can therefore only cost -- not save -- state resources.

To require further, as the State does, that an indigent must accept all aspects of the government-funded legal assistance that relate to his appeal -- even when he only needs or wants one particular service -- is absurd. Instead of encouraging outside legal representation with the potential to conserve state assets, the rule only guarantees the expenditure of more government resources. Instead of creating a sys-

14

tem whereby the State may only have to pay for production of a transcript or waive a filing fee, but will not bear the far greater cost of accompanying legal services, Maryland's rule ensures that the State will foot the entire bill. See Fullan v. Commissioner of Corr. of N.Y., 891 F.2d 1007, 1011 (2d Cir. 1989) ("[T]he expense here would be greater if the State were required to pay the attorney's fee as well as the cost of the transcript."), cert. denied, 496 U.S. 942 (1990).

The State's related argument that it seeks to ensure reimbursement of its expenditures is weak. It is illogical to assume that any additional funds that the State might recover by forcing all indigents seeking to appeal under the auspices of the public defender would outweigh or even equal the increased amount it will end up spending in order to provide full legal representation for its extra clients. Again, with such an all-or-nothing rule, the State can only lose money.

Again, the State's motivation of providing competent legal representation for indigents is worthy, but its related actions here rest on an unproven, if not faulty, supposition which renders them arbitrary. The State presumes that an appeal handled outside the public defender's supervision is more likely to be frivolous or mishandled. That assertion is unsubstantiated by the record.**12** Therefore, it cannot serve as a valid reason for interfering with the constitutional rights of Miller or any other indigent not receiving public defender representation. Moreover, the desire to curb frivolous appeals cannot justify any prerequisite to a direct appeal unless it is uniformly applied to indigents and non-indigents alike. See Rinaldi, 384 U.S. at 310-11; Draper v. Washington, 372 U.S. 487, 499 (1963); Douglas v. California, 372 U.S. 353, 357-58 (1963). "When an indigent is forced to run [the] gantlet of a preliminary showing or merit, the right to appeal does not comport with fair procedure." Douglas, 372 U.S. at 357.

Finally, we note that there are many valid reasons for permitting, not punishing, pro bono representation on appeal. Recognizing and

_____

**12** The state court of appeals noted that the rule ensures that control over expenditures for transcripts is vested in the public defender's office. There is no evidence, however, that appellants with pro bono counsel seek unnecessary transcripts. In fact, Miller sought only those portions of his trial transcript relevant to his direct appeal.

15

protecting an appellant's right to counsel of choice are activities much more likely to boost the public's perception of the justice system than to undermine it. See United States v. Washington, 797 F.2d 1461, 1466 (9th Cir. 1986) (explaining that "the public very well may have greater confidence in the integrity of the judicial process assured that a criminal defendant's right to counsel of his choice will not be lightly denied."). One would expect all states to encourage poor defendants to accept offers of free legal representation from competent attorneys outside the public defender's office. Clearly, allowing pro bono representation can only benefit Maryland's overburdened and underfunded legal services system by supplementing its resources at no extra cost. In addition, it would emphasize the State's need and desire for volunteer legal representation. See Mallard v. United States Dist. Court for Southern Dist. of Iowa, 490 U.S. 296, 310 (1989) ("[I]n a time when the need for legal services among the poor is growing and public funding for such services has not kept pace, lawyers' ethical obligation to volunteer their time and skills pro bono publico is manifest."). The way to accomplish these goals is to accommodate, not penalize, pro bono legal representation.

IV

In conclusion, we find that the interpretation and application of Maryland Rule 1-325(b) violated Miller's constitutional rights. The rule requires an indigent criminal defendant with pro bono legal representation to forfeit his counsel of choice in order to obtain a transcript needed for appeal. Thus, for no compelling reason, an indigent seeking to appeal his conviction is forced to choose between his constitutional rights in a way that a wealthier defendant is not. That outcome cannot be judged consistent with the guarantee of meaningful access to justice. It "violates equal protection principles because it distinguishe[s] between poor and rich with respect to such a vital right. But it also violate[s] due process principles because it decide[s] the appeal in a way that [is] arbitrary to the issues involved." Evitts, 469 U.S. at 404.

Because we cannot allow administrative rules so easily to defeat constitutional guarantees, we reverse the district court with instructions to issue the writ directing the State of Maryland to provide Mil-

16

ler with a trial transcript and an opportunity to appeal his conviction and sentence.

REVERSED AND REMANDED WITH INSTRUCTIONS

HAMILTON, Circuit Judge, dissenting:

I cannot agree with the majority's conclusion that Miller's constitutional rights were violated in this case. Therefore, I respectfully dissent.

The premise of the majority's conclusion is that the State of Maryland forced Miller to forfeit his constitutional right to an attorney of his choice when he sought to assert his constitutional right to a trial transcript at state expense. This premise is flawed, however, because the State of Maryland never deprived Miller of his constitutional right to counsel of his choice.

The Sixth Amendment to the Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. The right to counsel confers on a state criminal defendant the absolute right to be represented by counsel at trial, see Gideon v. Wainwright, 372 U.S. 335 (1963), and, provided the state has appellate review, on a first direct appeal, see Douglas v. California , 372 U.S. 353 (1963).*

The Sixth Amendment also protects a criminal defendant's right to counsel of his or her choice. See Wheat v. United States, 486 U.S. 153, 159 (1988). However, unlike the right to counsel, the right to counsel of choice is not absolute. See United States v. Gallop, 838 F.2d 105, 107 (4th Cir.), cert. denied, 487 U.S. 1211 (1988). The right to counsel of choice enables a criminal defendant "to select and be represented by [his or her] preferred attorney." Wheat, 486 U.S. at 159. However, a criminal defendant cannot "insist on representation by an attorney he [or she] cannot afford." Id. This is so because the protections of the Sixth Amendment right to counsel of choice do not

_____

* A state is not required to provide appellate courts or appellate review. McKane v. Durston, 153 U.S. 684, 687-88 (1944).

17

extend "beyond `the individual's right to spend his [or her] own money to obtain the advice and assistance of . . . counsel.'" Caplin & Drysdale Chartered v. United States, 491 U.S. 617, 626 (1989) (quoting Walters v. Nat'l Ass'n of Radiation Survivors, 473 U.S. 305, 370 (1985) (Stevens, J., dissenting)); see also Wheat, 486 U.S. at 159 (noting that "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers"). Consequently, an indigent criminal defendant has no constitutional right to have a particular lawyer represent him or her. Gallop, 838 F.2d at 108; see also Green v. Abrams, 984 F.2d 41, 47 (2d Cir. 1993) ("indigent defendant has no right to choose the particular counsel appointed"); United States v. Bradley, 892 F.2d 634, 635 (7th Cir.) (indigent criminal defendants "cannot pick and choose among members of the district court's bar"), cert. denied, 495 U.S. 909 (1990); Thomas v. Wainwright, 767 F.2d 738, 742 (11th Cir. 1985) ("indigent criminal defendant has an absolute right to be represented by counsel, but he does not have a right to have a particular lawyer represent him"), cert. denied, 475 U.S. 1031 (1986).

In this case, it cannot be gainsaid that Miller is indigent. Accordingly, Miller does not have a constitutional right to demand that a particular attorney represent him on his direct appeal. The Constitution requires that the State of Maryland provide Miller counsel on direct appeal, and the State of Maryland has fulfilled this obligation by providing that service through its public defender's office. The State of Maryland's decision to fulfill its obligation to indigent criminal defendants by requiring that they obtain counsel through the public defender's office is eminently reasonable and constitutionally proper. Thus, the State of Maryland's decision cannot, and should not, be questioned by this court. In short, as an indigent, Miller has no right to demand counsel on his own terms and the State of Maryland has fulfilled its obligation to provide him counsel.

Nor were Miller's rights under the Equal Protection Clause of the Fourteenth Amendment violated in this case. In the context of indigent criminal defendants exercising rights of appeal, the Fourteenth Amendment prevents states from "arbitrarily cut[ting] off the appeal rights for indigents while leaving open avenues of appeal for more affluent persons." Ross v. Moffitt, 417 U.S. 600, 607 (1974). While

18

the Equal Protection Clause of the Fourteenth Amendment "does not require absolute equality or precisely equal advantages . . . [or] . . . require the State to equalize conditions," id. at 612 (citation and internal quotes omitted), it "does require that . . . indigents have an adequate opportunity to present their claims fairly within the adversary system," id. (citation and internal quotes omitted). Thus, a state cannot adopt procedures which leave an indigent criminal defendant "entirely cut off from any appeal at all," by virtue of his or her indigency, Lane v. Brown, 372 U.S. 477, 481 (1963) (striking down Indiana law that only public defender could obtain free transcript of hearing on coram nobis application; thus, if public defender declined to request one, indigent could not obtain a transcript), or extend to such indigent criminal defendants merely a "meaningless ritual" while the more affluent have a "meaningful appeal," Douglas, 372 U.S. at 358 (holding unconstitutional California's requirement that counsel on appeal would be appointed only if appellate court determined that such appointment would be helpful to the indigent or the court). In short, the duty of the states is to ensure that indigent criminal defendants have "an adequate opportunity to present [their] claims fairly in the context of the State's appellate process." Ross, 417 U.S. at 616.

The State of Maryland's procedure assures indigent criminal defendants of an "adequate opportunity" to present their cases on appeal. Under the State of Maryland's system, all indigent criminal defendants are provided effective assistance of counsel, whether represented by the public defender's office, by a private attorney appointed by the public defender's office, or by an attorney appointed by the court. All the State of Maryland asks is that the indigent criminal defendant first apply for representation with the public defender's office. In addition, under the State of Maryland's system, all indigent criminal defendants receive transcripts at state expense, provided they likewise comply with the simple procedure of applying for representation with the public defender's office. The type of appeal an indigent criminal defendant receives in the State of Maryland does not turn on the amount of money he has, but rather on his or her willingness to accept counsel as provided by the laws of the State of Maryland. Because the laws of the State of Maryland provide Miller with an "adequate opportunity" to present his claims on direct appeal, his rights under the Equal Protection Clause of the Fourteenth Amendment were not violated.

19

In summary, Miller was not forced to forfeit his right to counsel of his choice because, as an indigent, he had no right to counsel of his choice. The State of Maryland's procedure for providing counsel and transcripts for the purpose of enabling indigent criminal defendants to pursue direct appeals complies with the mandates of the Constitution. Because I would affirm the judgment of the district court, I respectfully dissent.

20